CHAPMAN v. LIPSCOMB.

1. Exceptions to a decree are required by the fifth rule of this court to state specifically the errors alleged; an allegation of error by mere reference to exceptions sustained or overruled by the Circuit judge, is insufficient.

2. Where a master's report fails to state its conclusions of law and fact separately, the proper remedy is a motion to recommit; it furnishes no ground for an exception.

3. Where an action at law, as, *e. g.*, for the recovery of personal property and damages for its detention, is referred by consent to a master to determine all the issues, whose findings of fact are adopted by the Circuit judge, this court has no power to review such findings.

4. Nor it is otherwise where the answer sets up an equitable defense, for the complaint determines the character of the action. In such case the legal and equitable issues must be tried, each by their appropriate tribunal; but here the exceptions as to findings of fact relate only to the legal issues, and cannot therefore be considered.

5. The code of procedure has abolished the difference in forms of action as they heretofore existed in the two jurisdictions, but has made no change as to causes of action, or in the marked distinction which formerly existed between law and equity.

6. The true test of a partnership is the existence of a communion of profits and losses.

7. A contract whereby one party is to furnish a certain number of laborers to work in a brickyard, and to receive therefor one-half of the bricks made and to have the option of purchasing a fixed number at a stated price, the other party to make the brick and defray all other expenses, does not constitute a partnership.

8. And the party making the brick could sell to a stranger his half of the brick on hand, and the purchaser would be entitled to the possession of the property purchased, without regard to his vendor's indebtedness under the contract.

9. Exceptions taken at the reference to the admission of incompetent testimony by the master, not considered, it not appearing that the Circuit judge made any ruling upon them, and no exceptions upon these points having been taken to the Circuit decree.*

Before COTHRAN, J., Richland, November, 1881.

---

* The brief does show that this testimony was objected to by defendant when offered, and that exceptions were duly taken to the master's ruling admitting it. We do not, however, understand this court to have overlooked those exceptions, or to hold that any further exception was necessary to bring this matter before the Circuit Court; but that an exception to the ruling or decree of the Circuit judge, upon this testimony, was necessary to bring before this court any error committed by him in overruling the exceptions noted by the master in his transcript of the testimony. It will be observed that the chief justice is confining himself to the exceptions taken to the Circuit decree, the first of which refers back to the exceptions taken to the master's report, and as the exceptions to the admission of this testimony are not to be found in the exceptions taken to the master's report, nor alluded to in the other exceptions to the Circuit decree, the question, although properly before the Circuit Court for determination, if there urged, was not raised by any of the exceptions upon which the appeal to this court was based.—REPORTER.

'This was an action by W. W. Chapman against T. J. Lipscomb, superintendent of the South Carolina penitentiary, commenced in August, 1879. The nature of the action and the pleadings are stated in the opinion of this court.

By consent of counsel, the cause was "referred to N. B. Barnwell, Esq., master for Richland county, to take testimony and determine all issues of fact and law in the above stated cause, and that he report his actings and doings in said cause with all convenient speed to this court." The master reported as follows:

This cause arises upon the following facts: On August 4th, 1879, one J. A. Bondurant sold and delivered to the plaintiff, for a valuable consideration (to wit, the right to manufacture and sell in certain counties in Georgia a certain article, known as a "cotton planter," the patent right to which was owned by the said plaintiff), the articles mentioned in the complaint, the said articles being then in the custody and control of the said J. A. Bondurant, who was, at that time, engaged in the manufacture of brick, upon a brickyard held by the defendant, under a lease from the Columbia Water Power Company, the said defendant having entered into a contract with the said J. A. Bondurant and one J. P. Bondurant, the father of the said J. A. Bondurant, the terms of which are set out in the answer in this case.

Being satisfied that this was a *bona fide* sale for value by the said J. A. Bondurant, acting for himself and the said J. P. Bondurant, to the said plaintiff, and there being no satisfactory proof before me of any fraud and collusion between the parties, it only remains to inquire whether, under the terms of the contract, the said J. A. & J. P. Bondurant had such right and title in the property sold as to enable them to give a good title to the plaintiff, without the knowledge and consent of the defendant thereto, it being admitted that the defendant knew nothing of the transaction between the plaintiff and the said J. A. Bondurant.

It is claimed by the defendant, that under the terms of the contract between himself and J. A. & J. P. Bondurant, that he, the defendant, became a partner with the said J. A. & J. P. Bondurant in the manufacture of the said brick, and that, until a division of the brick, the same remained partnership assets,

and that the plaintiff, being fully informed, as it is admitted he was, of the terms of the contract, could acquire no right to the property until there had been an accounting between the defendant and the said J. A. & J. P. Bondurant. Under this view of the case on the part of the defendant, the defendant at first refused to give up any part of the property purchased by the plaintiff; subsequently, and after suit brought, the defendant permitted the plaintiff to take all of the articles except the 171,000 brick, being the one-half of a kiln of brick of 342,000 brick then upon the premises, the said brick having been made under the contract hereinbefore referred to. All the brick the defendant has taken possession of, and made such use of them as he thought proper, to wit, has used the whole kiln for the purposes of the South Carolina penitentiary.

Even if, under the terms of the contract, it could be held that a partnership existed, I am satisfied that the said J. A. & J. P. Bondurant had full authority and power to sell the one-half of the said kiln, without the knowledge or consent of the said defendant, to such person and for such price as seemed best to themselves. I am the more confirmed that this is the correct interpretation to be given to this contract, from the fact that this seems to have been the view held by the parties themselves in executing this contract, to be inferred from the fact that the said J. A. Bondurant did sell in such manner as he saw fit, without consultation with the said defendant, a large quantity of brick, to wit, more than 100,000, to such persons and at such prices as seemed proper to the said J. A. Bondurant, all of which was well known to the defendant, who only seemed to have taken notice of these sales to the extent of cautioning the said J. A. Bondurant against failing to be able to furnish the penitentiary with the amount of brick expected. But I am satisfied that the terms of this contract constituted no partnership between the parties, and that the remedy of the defendant is not against the property in dispute in any way whatever, but must be upon the contract against the parties thereto. Under this view, the right of the plaintiff to this property, without let or hindrance, accrued absolutely on August 4th, 1879, and it was the duty of

the defendant to have peaceably permitted him to take possession thereof.

The value of the brick I find to be $6 per thousand. The damages sustained by the plaintiff I assess at $250.

I find, as a conclusion of law, that the plaintiff is entitled to the possession of the property sued for, and if the same be not delivered, for the value thereof, to wit, the sum of $1,026, and for the sum of $250, his damages, and for the costs of this action.

All of which is respectfully submitted.

(Signed,) NATHANIEL B. BARNWELL,

March 31st, 1880. *Master*.

The following was the contract between the defendant and the Bondurants:

THE STATE OF SOUTH CAROLINA, county of Richland—This indenture in duplicate, had, made and agreed upon, this 13th day of February, 1879, by and between T. J. Lipscomb, superintendent of the South Carolina penitentiary, of the first part, and J. A. & J. P. Bondurant, of Augusta, Ga., of the second part, witnesseth:

*First.* That the party of the first part, in consideration of the payment to him of a certain proportional share of bricks hereinafter stipulated to be paid, and of the covenants hereinafter entered into by the party of the second part, doth hereby agree to furnish to said party of the second part fifty able-bodied convicts, for the term of seven months, daily, (Sundays excepted,) or their labor for 9,100 days in the aggregate in each year. The labor of said convicts to be used for the purpose of brick making on the Kinsler (or Green) brickyard tract, in Richland county.

*Second.* Said convicts, and a sufficient guard to guard them, to be furnished free of cost to said party of the second part. The feeding and clothing of said convicts, and the whole cost of maintaining the guard, to be defrayed by the party of the first part.

*Third.* The said party of the first part also agrees to assume the payment to the owner of the yard of the royalty of 100 bricks for every thousand bricks made.

*Fourth.* That the party of the second part agree to make three million (3,000,000) of bricks in each and every year during the terms of this contract, using only 9,100 days' labor of convicts in each year, and to turn over to the party of the first part at the brickyard, one-half of all the bricks made. Said bricks to be of average quality of the bricks burned in each kiln.

*Fifth.* That the said party of the second part agrees to sell to said party of the first part 1,000,000 of bricks in the year 1879, if he needs them for the use of the South Carolina penitentiary, at the rate of five dollars ($5) per thousand on the yard, or six dollars ($6) per thousand delivered at the penitentiary.

*Sixth.* That the said party of the second part agrees to assume all other expenses consequent upon the manufacture of the brick, except the convict labor, guard, and royalty to the owner of the yard.

Witness our hands and seals, this 13th day of February, 1879. This contract to exist for two (2) years, with the privilege of five (5) years.

T. J. LIPSCOMB, [L. s.]
JOHN P. BONDURANT, [L. s.]
JAMES A. BONDURANT, [L. s.]

To the master's report, defendant excepted as follows:

1. That the master has not reported the testimony in the cause. 2. That his report does not contain a statement of the facts found and the conclusions of law separately. 3. To statement in pages 2 and 3 of copy furnished. 4. To findings. That this was a *bona fide* sale for value. 5. That there was no satisfactory proof of fraud and collusion between Bondurants and plaintiff. 6. That the Bondurants had full power and authority to sell one-half of the brick kiln mentioned, without knowledge or consent of the defendant. 7. To the reasons given for the preceding finding. 8. That the terms of the contract between the Bondurants and defendant constituted no partnership. 9. That defendant's only remedy is against the Bondurants only. 10. That plaintiff's right to this property, without let or hindrance, accrued absolutely on August 4th, 1879, and it was the duty of defendant to have peaceably permitted him to take possession thereof. 11. To the value of the brick found. 12. To the damages sustained by plaintiff found. 13. To the final conclusions.

The Circuit decree was as follows:

This was an action heard by the court at the fall term of the Court of Common Pleas for Richland county, November, 1881, upon exceptions to the master's report, the cause

having been referred to him " to take the testimony and determine all issues of fact and law" therein. It appeared upon the trial before me that an appeal had been taken from the refusal of a former Circuit judge, to hear the cause upon the ground of want of jurisdiction of the master, to hear the matter upon reference, the defendant insisting that the provisions of the code, embraced in sections 294, 295, 296, 297 and 436, apply only to referees, and not to masters in those counties of the State where such had been appointed, and the office of referees abolished. The Supreme Court, by McIver, A. J., say in this case : " We are, therefore, unable to concur in the conclusion reached by the Circuit judge, that the master has no jurisdiction to hear this case; and, on the contrary, think that the parties were entitled to have the case heard upon the master's report and exceptions." And the judgment of the court was made in accordance therewith. 15 *S. C.* 470.

The master's report, which embraces a vast amount of testimony taken by him, as well as other testimony taken by commission, has been carefully considered; and, although there is much conflict between the parties and the witnesses for plaintiff and defendant, and some circumstances connected with the conduct of the plaintiff and J. A. Bondurant, especially of a character somewhat suspicious, I fail to find in these such proof of fraud as to overcome the presumption of integrity, which the law throws over and around the transactions of men in the ordinary affairs of business.

Concurring, as I do, in the conclusions reached and announced by the intelligent master who heard this cause, I can the more freely criticise the 'inartificial manner in which he has blended in the report his conclusions of fact and law. It would have been better to have separated these more distinctly than he has done. He finds, however, as matter of fact (1) that the transaction impeached by the defendant was *bona fide ;* (2) that there was no partnership between the Bondurants and the defendant, as the representative of the penitentiary authorities (this latter I take to be a mixed question of law and fact); and, as further matter of fact, the value of the bricks sued for, and the damages sustained by the plaintiff; and, as a sole conclusion of law, the

plaintiff's right to recover the possession of the property sued for, to wit, $1,026, and his damages, the sum of $250, and the costs of this action. In all of these I concur.

Wherefore it is ordered, adjudged and decreed, that the exceptions to the master's report be, and the same are hereby, overruled, and that said report be confirmed and made the judgment of this court.

From this decree defendant appealed on the following exceptions:

1. On all the grounds which were exceptions to the master's report. 2. Because his Honor ordered those exceptions to be overruled, and confirmed said report, and made it the judgment of the Circuit Court. 3. On all the grounds on which the Circuit judge bases his conclusion, which are incorporated with those exceptions. 4. Because the proof shows, conclusively, fraud on the part of plaintiff and his associates.

*Messrs. Bachman & Youmans,* for appellant.

*Messrs. Rion, Lyles & Barron,* contra.

October 28th, 1882. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. This case was heard below upon a report of the master, with the testimony upon which the report was founded. The action was an ordinary action for the recovery of personal property, or for the sum of $1,000, the alleged value thereof, in case a delivery could not be had, and for damages.

The property consisted of 179,000 bricks, more or less, alleged by the plaintiff to have been in his possession and wrongfully taken by the defendant. The defendant relied mainly upon a contract between himself and certain parties who had made the bricks, to wit, J. A. & J. P. Bondurant, under which the bricks had been made, alleging that these parties had failed to carry out this contract, and that by their consent he had taken possession of the bricks as of right under said agreement, and that no sale or assignment of said bricks, by these parties to the plaintiff, could bind him, except so far as there might be a surplus after a full accounting between the said J. A. & J. P.

Bondurant and himself; and he demanded an accounting. There was no averment of fraud in the answer as to the sale. The contract referred to will be found in the report of the case. [Here follows a statement of the master's report, the Circuit decree and the exceptions.]

This appeal was taken before the recent rule of this court, on the subject of exceptions presented in the general form of the first exception, to wit, simply by reference to exceptions taken elsewhere than to the decree or judgment itself. It is our duty, therefore, to look back to the master's report, and to take up the exceptions thereto and consider them *seriatim.* The first was disposed of by by a subsequent order of the Circuit judge requiring a report of the testimony to be made, which was done, and the report filed. If that report was not satisfactory, there should have been a motion to recommit. This fact shows the confusion which may result from exceptions taken in this general and informal way, and vindicates the rule recently adopted, which rule the court hopes will not escape the notice of the profession in their preparation of appeals in the future.

The second exception is met by the cases of *Bollman* v. *Bollman,* 6 *S. C.* 44, and *State, ex rel. Cathcart,* v. *Columbia,* 12 *S. C.* 393. In the first case, it was said on this subject: "It may be enough to say that the language of the code is to be considered as directory and not mandatory." Again, "In addition to what has been said, if the separation was necessary to a better understanding of her rights, her course was not to except because of the omission, but to move for a recommittal of the report, that it might be re-produced in the desired form." In the second case, the principle was announced as follows: "The first exception has been previously disposed of by this court, holding that the neglect of the referee or Circuit judge to present distinct findings of fact and conclusions of law is not error." The court say further: "It is to be regretted that so little regard is paid to this salutary requirement; but the remedy is not by appeal to this court on the ground of error of judgment; what might be the effect of a motion refused to correct such irregularity as a foundation of an appeal, we are not called upon to say, as that is not the present case."

The third exception questions "statements in pages 2 and 3 of copy furnished." We have no means of ascertaining the precise questions raised by this exception, and, therefore, pass it over.

The remaining exceptions question certain findings of the master, and which were adopted by the Circuit judge. These findings consist both of fact and of law. The findings of fact being, first, that a *bona fide* sale for value had been made of the bricks by the Bondurants to the plaintiff; second, that there was no fraud and collusion between Bondurants and the plaintiff; third, as to the value of the bricks, and, fourth, as to the damages found. The findings of law were, first, that the terms of the contract constituted no partnership between the Bondurants and the defendant; second, that the Bondurants had full power and authority to sell one-half of the brick kiln mentioned, without the knowledge or consent of the defendant; third, that defendant's remedy is against the Bondurants only.

As to the findings of fact, these cannot be reviewed by this court, however erroneous they might be. This court, as we have often had occasion to say, is for the correction of errors of law in cases at law, with appellate power only in cases of Chancery. In a law case, the facts are beyond our reach. The constitution gives them to the jury exclusively, except that the errors of the jury in this respect may be reviewed and overruled by the Circuit judge on motion for a new trial, and may, in an extreme case, reach this court on appeal from the action of the Circuit judge on such motion, where it involves an error of law. It is only in Chancery cases that we can review the facts, which must be brought here in such cases either by a "Case" made up for that purpose, or on a case with exceptions, which latter brings up both errors of fact and of law.

Now, to apply these principles, the question arises, is this a law case, or a case in Chancery? Whether it is the one or the other does not depend upon the form or mode of trial which the parties may have adopted. A law case, it is true, is usually tried by a jury, but the right to a jury may be waived, and the facts submitted to a master or referee, or to the court if the parties so consent, but the case is nevertheless a law case, and must

be governed by the principles applicable to cases at law. A case in Chancery is not different, under the code, from cases of that character before the code. The code has made no change as to causes of action, or as to the marked distinction which formerly existed between equity and law. These still exist, and the code leaving these untouched has dealt simply with the forms of action, having abolished all previous forms and prescribed one and the same for all classes of injuries or causes of action.

The cause of action in the present case was the withholding by the defendant of the personal property of the plaintiff, and the plaintiff desired to recover his property with damages for its detention. His form of action before the code would have been trover, which is an action at law. His action is still of the same kind and on the law side of the court involving no principles of equity whatever. Such being the character of the case, the facts involved, whether found by a master, referee or the court, are beyond the jurisdiction of this court, and, in considering the legal questions involved, these facts must be taken as they have been found below.

It may be said, however, that the answer set up an equitable defense, and converted the case into a case in Chancery. A defendant cannot change the character of the plaintiff's action by simply interposing an equitable defense. If this could be done, it would give power to the defendant to deprive the plaintiff of the right of trial by jury at his pleasure, which would be placing that important constitutional right upon a very uncertain tenure. The former practice in such cases was for the defendant to go into the Court of Equity and enjoin the action at law, until the equitable defense could be heard. Now, the Court of Equity having been abolished, and the jurisdiction of that court having been conferred upon the Court of Common Pleas, equitable defences, it is true, may be set up in that court, and be heard there with the legal action to which it is interposed as a defense, but the action and the defense are not consolidated into one and tried necessarily by the same tribunal; on the contrary, they still preserve their original and distinctive features, the one being still entitled to be tried by a jury and the other by the court under the forms of an equity proceeding.

In *Adickes* v. *Lowry,* 12 *S. C.* 108, the court, in discussing the nature of equitable defenses interposed in an action at law, said : " Such defense is equitable in its nature, and belongs to that side of the court which exercises the Chancery jurisdiction. Under the former practice, such defense could not have been set up in the action at law to try the title and recover possession. The defendant would have been obliged to file his bill in equity to restrain proceedings at law, and to seek such other relief as in equity he might have a right to demand. Under the Code of Procedure, all this may be affected by the pleadings in a single action, and new parties, if necessary, brought in ; but at the trial, the legal and equitable issues must be distinguished and decided by the court in the exercise of its distinct functions as a court of law and a court of equity, and only those should be determined by a jury which are properly triable by a jury, while those which would formerly have been properly triable in equity must be determined by the judge in the exercise of his Chancery power."

The case before the court was referred to the master by consent, " to take the testimony, and determine all issues, both of fact and law, and to report his actings and doings to the court." The master was thus charged with the whole case, complaint and defense, law and equity ; and discharging his duty under this consent order, he was invested with the functions, both of the jury and a chancellor—of a jury as to the facts upon which the plaintiff rested his case, and of a chancellor as to equities of the defense. The facts on the law side were those to which the defendant has excepted. As to these, as we have already said above, they are not before us.

We come, then, to the questions of law. The first and most important arises upon the construction of the contract. Did that constitute the defendant a partner with the Bondurants ? We think not. The true test of a copartnership is that there must be a communion of profits and losses. Story, in section 19 of his work on Partnership, says : " It is often laid down in elementary works, as well as in common authorities, that to constitute a partnership there must be a communion of profits and losses between the partners ; and this, in a qualified sense, is

perfectly true, when it is understood with proper limitations belonging to the statement." And in section 21 : " That each partner must, at all events, share in the losses, so far, at least, as they constitute a charge upon, and diminution or deduction from, the profits, and in this sense it is regularly true."

We see nothing in the contract which could subject the defendant to any losses which might overtake the business. Nor was he to have a certain portion of the products as profits. The benefit which he expected to derive was not dependant upon the successful operation of the business by the Bondurants, nor was it to await the payment of the expenses to be incurred. On the contrary, he was to have delivered to him by the Bondurants a fixed proportion of all the brick made on the yard, to wit, one-half—not one-half after the payment of debts and expenses incurred, but one-half of all made, the Bondurants agreeing also to sell to him 1,000,000 in the year 1879, at a certain rate. These stipulations were based upon the consideration that the defendant was to furnish a certain number of convicts as laborers in the yard. They are inconsistent with the idea of a copartnership, and we can see no error in the ruling of the court upon that subject.

Such being our conclusion upon the question of the partnership, it follows necessarily (the court below having found as matter of fact, that a *bona fide* sale had been made of the bricks in question by the Bondurants to the plaintiffs, and the sale free from fraud and collusion), that plaintiff's right to the property had been established, and he was entitled to a recovery. And the defendant's cause of action being for the breach of the contract on the part of the Bondurants, his remedy was against them only. The moment the court below construed the contract as constituting no partnership, the equitable feature in the defense vanished, and nothing was left but a plain and ordinary action at law for the recovery of personal property which depended solely upon the facts as developed in the testimony.

Some question is made in the argument of appellant as to incompetent testimony, but we find no exception among the thirteen taken to the report of the master, referring to this matter. Nor do we see that the judge made any ruling on this

subject, or that any exception to the decree raises such a question.

As to the damages, we see nothing erroneous in the ruling of the Circuit judge on that subject. The complaint was for the recovery of the property and damages for its detention. What amount of damages the plaintiff sustained was a question of fact exclusively for the jury, or other tribunal acting as a jury, subject to be corrected, if erroneous, by other proceeding than by appeal.

It is the judgment of this court that the judgment of the Circuit Court be affirmed.