GLOVER v. FARR.

1. At a sale for partition of an intestate's estate, A purchased a tract of land, and a few days afterwards B purchased an adjoining tract of the same estate. A then sold to C, who, finding that B was in possession of, and claimed under his deed, a strip of land which C claimed to be covered by the deed to A and by A's deed to him, instituted an action, stating these facts in his complaint, and demanded judgment that the mistake in B's deed be corrected, that the boundary line be properly designated, and that B be required to surrender to C the possession of the disputed strip of land. *Held*, that this was a plain action at law for the recovery of real property, and that the court below erred in treating it as a case in chancery.

2. The principle that the Court of Equity has the right to put a purchaser into possession of land sold under its orders, does not apply where dispute arises between one purchaser and the vendee of another purchaser, at the same sale, as to the boundaries of their respective purchases.

3. Nor could the plaintiff, holding the older deed, invoke the interposition of a Court of Equity upon the ground that there was a mistake in the deed made to defendant by the officer of the court; he has a plain and adequate remedy at law, to wit, an action for the recovery of the land.

4. As the matters alleged in the complaint make out such an action, the complaint should not be dismissed, although it demands only equitable relief. The character of an action is not determined by the relief demanded; it depends upon the facts alleged.

5. The court below having erred in treating this action at law as a case in chancery, the cause was remanded to the Circuit Court for a trial by jury.

6. Petition for rehearing refused.

Before PRESSLEY, J., Beaufort, March, 1883.

This was an action by Sarah E. Glover and Joseph Dewees against W. W. Farr, Edward P. Farr, and C. J. C. Hutson, commenced prior to March, 1880. One of the exceptions upon which the case came to this court was in these words: "Because his honor held that the court had jurisdiction further in the cause." All other matters are fully stated in the opinion.

*Messrs. J. W. Moore* and *W. J. Verdier*, for appellants.

*Mr. William Elliott*, contra.

October 12, 1885.   The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON.   William Heyward at one time owned a plantation situate in Beaufort County, and composed in part, with other tracts, of two tracts, one known as Bellefield and the other as Goodhope.   In 185– he sold Goodhope to one Mrs. McNeil, and subsequent to this he sold Bellefield to one James Bolan, who, after his purchase of Bellefield, bought Goodhope from Mrs. McNeil.   These two tracts were co-terminus at one point, Goodhope bounding Bellefield on the north.   James Bolan died in August, 1865, seized and possessed of considerable real estate composed of six tracts, Bellefield and Goodhope being two of the six, and leaving of force a last will and testament, by which he devised his real estate to his grandchildren, appointing certain parties therein named his executors, only one of whom, Thomas S. Behn, qualified, who, in 1866, filed a bill in the then Court of Equity for the partition of this real estate between the parties entitled under the will of his testator.

In this proceeding the commissioners in partition having returned that said real estate could not be advantageously divided, and having recommended a sale, an order of sale was obtained in 18— directing said sale to be made by Charles J. C. Hutson, referee.   The commissioners had returned that the lands consisted of six tracts, containing in the aggregate 6,347 acres, to wit: Old House and Preference, 895 acres; Bellefield, 1,460 acres; Goodhope, 1,215 acres; Scaly Hill, 663; Tallahassee, 1,450 acres; and Tar Kiln, 664 acres, as ascertained from plats thereof, which they had inspected, and which plats, it seems, had been made in a survey directed by the executor, who gave instructions as to the lines, said executor informing the surveyor that the original plats of these several tracts "had been taken by the Yankees during the war," and therefore could not be used. As to the line between Bellefield and Goodhope, the surveyor stated that he had been informed by the executor that a certain canal was the line between the two, the centre of which he regarded as the line, which he followed until he struck a double canal, when he ran the line between them until one of these gave out, when he continued the line until it intersected with Howard's line, which was the termination of the line between Bellefield and

Goodhope. The plats thus made were turned over to the executor.

On hearing the return, the Circuit Judge ordered the lands to be sold in whole tracts, or parcels, at public auction, or by private contract, on such terms and at such times as the referee, with consent of counsel, should determine. In pursuance of this order, the referee advertised the lands, by their respective names, as containing the number of acres mentioned, but with no mention of the plats or recent surveys; and in his report of sales made to the court, he stated that he had sold at public auction, on the first Monday in December, 1877, the tract called Bellefield, containing 1,461 acres, to Mrs. Sarah E. Glover, for the sum of $1,200; that having obtained no satisfactory bid for Goodhope, containing 1,215 acres, he had since sold said tract, to wit, on January 13, 1879, at private sale, to William W. Farr, for $600.

In the conveyance from the referee to Mrs. Glover of Bellefield, the tract was described as containing 1,461 acres, bounded north by lands of William C. Howard and estate of James Bolan, east by lands of the estate of James Bolan, south and west by lands of Joseph Glover; no mention being made of the survey and plat above referred to. The plat, however, as it appears, was delivered with this deed to an agent of Mrs. Glover. This deed was executed and delivered on January 10, 1879, three days before the sale of Goodhope to Farr, which was executed on January 13, 1879, and in which the premises were described as bounded north by the Honey Hill road, east by lands of the estate of C. C. Dupont, south by lands of the estate of James Bolan, and west by lands of W. C. Howard, containing 1,215 acres, and known as Goodhope; all of which will more fully appear by reference to a plat of the same attached, and made by Oliver P. Law, surveyor, on February 3, 1871.

Mr. Hutson, the referee, testified that he "sold Bellefield to Mrs. Glover, the plaintiff; sold it according to the description in the deed. * * * Mrs. Glover was not at the sale; was represented by her agent. That he had plats of all the places sold, which had been given to him by Mr. Behn, the executor. As he made title, he turned over the plats. Had the plats at

the court house in a roll. Sold at Beaufort court house, and does not remember if purchaser looked at plat; thinks no one did; may have done so. Advertised by acreage of plats. Sold by name of Bellefield." Mrs. Glover retained possession of Bellefield for some five years, when she sold to the plaintiff Dewees, executing a conveyance to him in the terms and with the boundaries as conveyed to her. Farr took possession of Goodhope immediately after his purchase, and has continued in possession ever since.

Some two years after Dewees bought from Mrs. Glover, finding that Farr was in possession of a certain portion of land which he claimed was within the original boundary of Bellefield, he instituted the action below, claiming that Mrs. Glover had purchased Bellefield according to its original boundary, without regard to the subsequent survey and plat, of which she knew nothing, and that in the same way Mrs. Glover had conveyed to him; that it was a mistake in the referee to convey Goodhope to Farr by the plat which covered a portion of Bellefield, after the sale of Bellefield to Mrs. Glover, and he prayed that this mistake should be corrected (the original suit for partition being still upon the docket), so that the proper boundaries of the two tracts should be given in the deeds, and that in accordance therewith the defendants should be required and decreed to surrender to the plaintiff Dewees so much of Bellefield as he, the said W. W. Farr, claims to hold under his title from the referee, &c.

The defendants answered, denying that Bellefield was sold to Mrs. Glover simply by its name and without notice and regard to the plat thereof. They denied, further, that any mistake had been made by the referee in the deed of Goodhope to W. W. Farr; and they claimed that Goodhope was purchased according to the plat, which covered the land in dispute, and that plaintiff's deed did not cover said land. They therefore prayed that the complaint be dismissed, and that defendants have judgment for their costs.

The case was referred to Mr. Charles E. Bell, who, after taking full testimony, all of which is reported, found as conclusions of fact: "1. That referee Hutson did not make a mistake in the boundaries to Goodhope, as given in his deed of same to

defendant, William W. Farr. 2. That the lands in dispute are not part of Bellefield, sold by referee Hutson to Sarah E. Glover. 3. That the lands in dispute are part of the plantation Goodhope, sold by referee Hutson to defendant, W. W. Farr. 4. That defendants, William W. Farr and Edward P. Farr, are not, nor is either of them, in possession of any lands belonging to Bellefield, within the ascertained limits thereof." And as his conclusion of law, he recommended "that the complaint be dismissed, but without prejudice to the legal rights, if any, of the plaintiffs."

When the case came to be heard on this report by his honor, Judge Pressley, a question was raised as to the jurisdiction of the court. Upon this question, the judge said: "I am satisfied that this court, having sold Bellefield to plaintiffs and Goodhope to one of the defendants, has jurisdiction to put such purchaser into peaceable possession of the land he bought." He further said: "On the law points, I am well satisfied that the court, in selling the lands of Bolan for partition, intended to sell the plantations known as Bellefield and Goodhope separately. That nothing in the proceedings of the court gave notice to bidders that the boundaries were to be changed, or had in any manner been affected by the act of the surveyor, who, without knowing the boundaries, made plats of the separate plantations and fixed their acreage unadvisedly."

He further found that so much of the north canal in dispute, between its junction with the Bellefield back-water and the point below Rolling Dam where it intersected with the canal from Goodhope back-water, was a part of Bellefield; that so much of the land as had been worked as Buzzard Roost, on the Bellefield place north of this canal, should be assigned to Bellefield. But inasmuch as there was doubt in the testimony whether there was also a Goodhope Buzzard Roost, of which, in the opinion of the judge, there was no reliable testimony as to its boundary, he felt compelled to send the case back, for further testimony on that point.

And he adjudged and decreed, "that so much of the conveyances of Bellefield and Goodhope made by the referee under former decree of this court as sets forth the boundaries between

them, or the number of acres, or refers to the erroneous plats then delivered by the referee, together with the said plats, be, and are hereby, annulled, set aside, and declared void, so that said conveyances shall be held and stand good only as convey-ances respectively of the plantations Bellefield and Goodhope." Further. "That the north canal in dispute from its junction with Bellefield back-water down to a point below Rolling Dam where it is intersected by the canal from Goodhope back-water be, and it is hereby, assigned to Bellefield as the sole property of its owner." And, further, "that the question of the boundary line north of said canal, between Bellefield and Goodhope, be recommitted to referee for further testimony, and especially on this point, that he take testimony and report whether the Screven or Howard deeds and plats called for Bellefield (Pumpkin Hill) or Goodhope on its eastern line; and if both be called for, then how much of either to be fixed by the surveyor. The said referee shall also cause said surveyor to examine the water sys-tem of Goodhope reserve, and to delineate on their plats hereto-fore made all ancient canals, if any, whereby the land in dispute could have been flowed from said reserve. And if any of the laborers who worked Goodhope whilst it was the separate property of Mrs. McNeil can be found, let the referee take their testimony as to the boundary up to which they worked. The testimony already reported is to stand good without further report thereon by the referee. He is to report only on the additional testimony to be taken as herein stated."

From this decree the case is before us on appeal by the defen-dants. Several questions have been raised in the appeal, but from the view which we have taken of the case, the only one which it is proper to decide now is that involving the jurisdiction of the court. The case below seems to have been regarded by the plaintiffs, and so held by the Circuit Judge, to be a case in chancery, the plaintiffs founding their action upon an alleged mistake in the deed, from the referee, of Goodhope to the defen-dant, W. W. Farr, which mistake they sought to have corrected, and therefore to have surrendered to them the land in dispute, which, as they alleged, by the suggested mistake had been incor-porated in said Goodhope deed; and the Circuit Judge sustaining

the jurisdiction of the court, on the ground that the Court of Equity "having sold Bellefield to the plaintiffs and Goodhope to one of the defendants, it had jurisdiction to put the purchasers into peaceable possession."

We will consider first the question of jurisdiction as held by the Circuit Judge. It appears that the real estate of James Bolan was ordered to be sold in separate tracts, and that they were thus sold, Bellefield and Goodhope, by their respective names. Bellefield was sold to Mrs. Glover at public sale some days before the sale of Goodhope to the defendant, W. W. Farr. The deed of Bellefield was executed to Mrs. Glover at once, calling for adjoining lands as boundaries, and Mrs. Glover was in legal possession of all that her deed covered before the sale of Goodhope to Farr. After the sale of Bellefield to Mrs. Glover Goodhope was sold at private sale to Farr, who received a deed with plat, which embraced the land in dispute. It does not appear, however, at what time the defendant, Farr, took actual possession of this particular portion. But, in any event, it was after the sale to Mrs. Glover, and after Mrs. Glover was in legal possession if her deed embraced it, and also after the two sales had been reported, confirmed, and ended by the court.

This is not a case, then, where the land of one who is a party to a proceeding is sold by order of the court, and he refuses to yield possession, thereby necessitating the aid of the court to eject him in behalf of the purchaser. But it is a case where two tracts of land have been sold at separate times and to separate purchasers, neither being in possession at the time, and where, after the purchase, and after the execution of their respective deeds, one takes actual possession of a portion of land claimed by the other, each founding his claim on his deed. In such a case it is clear that the right of the parties would depend upon the deeds. If both deeds embraced the land (which would involve a question of location), the oldest would govern; but if only one embraced it, then that would control. This, however, would not be a case in chancery for the equity side of the court, but it would be an ordinary case of law for the recovery of real estate, the litigants founding their respective claims on the deeds which they held.

If either the executor or the heirs at law of James Bolan, or his devisees, or any other person being a party to the partition suit in which these lands were ordered to be sold, had been in possession when the sale took place, and after said sale had refused possession to the purchaser, then the principle under which the Circuit Judge acted would have been applicable. But in a contest like that before the court, which has arisen since the sale between the purchasers, and upon facts occurring since, we fail to see its pertinency. Besides, years have elapsed since Mrs. Glover bought from the referee, she has since sold to the plaintiff, Dewees, and the action below is really an action between Dewees and W. W. Farr, in which Dewees claims a portion of land that Farr is cultivating. It is admitted that both parties claim from a common source. The questions are, were the two tracts sold according to original boundaries—one or both ? Do both deeds cover the land in dispute? If so, which is the oldest? These are questions for a jury, and not for chancery. And unless a jury trial was waived, of which there is no evidence, we do not see how the court below could assume jurisdiction on its equity side.

The complaint, however, alleges a mistake in the deed to the defendant, Farr, and invokes equity jurisdiction for the correction of this mistake. It would be competent for the court to exercise jurisdiction in a case involving a mistake, where the mistake occurred between the parties to the instrument sought to be corrected. It will be observed, however, in this case that the plaintiffs do not seek to correct the deed to Mrs. Glover under which the plaintiff, Dewees, claims. No error is alleged in that deed. On the contrary, it is claimed that this deed is right, and that it embraces the land in dispute, as it conveys Bellefield, which, according to its original boundaries, contained the land in dispute. Nor does the defendant, W. W. Farr, seek to correct any mistake in his deed as between him and his grantor. But the plaintiffs seek to correct a mistake between the referee and the defendant, W. W. Farr, in a business matter to which they, the plaintiffs, were not parties, and had no connection therewith, except that they, too, some days previous to the sale of Goodhope to said defendants, had bought Bellefield from said referee.

We do not see upon what ground equity can take cognizance of such a mistake at the instance of the plaintiffs, even if the mistake was apparent. Certainly the plaintiffs could not invoke equitable interposition, unless they have been injured by the mistake. Do the facts alleged in the complaint show any injury to the plaintiffs growing out of the alleged mistake? The plaintiffs claim that they bought original Bellefield, and that the disputed land lies within its original boundary; that the deed to Mrs. Glover, which was executed and delivered before the deed to the defendant, Farr, covers this land. If this be true, why correct the mistake in the subsequent deed to Farr of Goodhope? Is not the title to Mrs. Glover perfect without the correction sought? Her deed is the oldest, admittedly, and is from the same party under whom Farr claims. And if the facts alleged as the basis of the action can be sustained, we see no difficulty in plaintiffs' way. Have they not a plain and adequate remedy at law in an action for the recovery of real estate? It would seem so, and consequently there is nothing in the case of an equitable feature authorizing equity jurisdiction.

But does this demand a dismissal of the complaint? We think not. The case in all of its features, except the prayer, is a case at law. The main facts alleged in the case. when stript of their surroundings, amount to nothing more than that the plaintiff, Dewees, is the legal owner of the land in dispute, and that the defendants are in possession thereof, refusing to surrender. These are the facts necessary to be alleged in an action for the recovery of land. And the action, with the exception of the prayer for relief, is, in fact and substance, an action for the recovery of the land in dispute, but the prayer for relief is no part of the action. The character of an action is not determined by the relief demanded; it depends upon the facts alleged.

The error below has been in disregarding the facts and being governed by the relief prayed. The questions whether Bellefield and Goodhope were sold with their original boundaries—one or both—and if so, whether the land in dispute was within the one or the other; and, if within the boundary of Bellefield, whether the deed to Mrs. Glover was the oldest deed, are all questions of fact involved in the greater question of title. And being questions

of fact involving title to real estate, they were questions for a jury, and should have been tried by a jury.   The mistake made below, both by the parties and the court, as we apprehend, was in regarding the case as an equity case, and having it heard as such, when it should have been heard and tried as a law case and by a jury.   This mistake can be corrected by remanding the case for a jury trial, and to this end—

It is the judgment of this court that the judgment of the Circuit Court be reversed, and that the case be remanded to calendar 1 of the court below for a jury trial, unless a jury be waived, with the privilege on the part of the plaintiff to amend by striking the name of Mrs. Sarah E. Glover from the record, if so advised; and, if both sides consent, that the testimony taken and reported in the case by the referee be submitted to the jury, with such other competent testimony as may be offered.

In this case there was a petition by plaintiffs for a rehearing upon the ground that appellants had waived a trial by jury by submitting, without objection, to a trial by the court, and that they were not entitled to a jury trial, because a reference had been ordered.

November 28, 1885.   The following order was passed

PER CURIAM.   The real issue made by the pleadings in this case was title to the land in dispute, which was a question for the jury.   True, the parties had a right to waive a jury trial, and had this been done, and had the issue been tried by the judge, there would have been no error, as the case would still have been a law case, tried, however, by the court by consent of the parties. But this was not the question tried below ; on the contrary, the main question tried was whether the deed of defendant should be reformed in accordance with the prayer of the complaint, and the parties put into possession as the reformed deed might demand.   This was converting the law case made in the pleadings into a chancery case, not properly in the pleadings, which this court thought was error.   In this view it made no difference as to the result, whether or not a jury was waived.   The petition is dismissed.