7821

GODFREY v. E. P. BURTON LUMBER CO.

1. RESCISSION OF CONTRACTS—ABATEMENT.—One purchasing land, going into possession and committing acts of ownership thereon after knowledge of an outstanding title cannot have the contract rescinded before eviction except for fraud, nor can he recover damages *pro tanto* in action to rescind.

*Divided Court as to remedy.*

MR. JUSTICE HYDRICK *thinks where a complaint states facts entitling plaintiff to one of two remedies, the prayer may be resorted to, to ascertain which he has elected to pursue, and where this and the conduct of the case shows he has elected to pursue one and the proof does not entitle him to that relief his complaint should be dismissed without prejudice.*

MR. JUSTICE WOODS, THE CHIEF JUSTICE, *concurring, thinks, in an action for rescission, where the proof does not warrant that relief, the plaintiff may have the lesser relief of abatement of the price if the evidence is sufficient to show that relief to be equitable.*

*Doctrine of rescission discussed and cases reviewed.*

2. REHEARING refused.

Before DANTZLER, J., Colleton, February, 1910.
Affirmed.

Action by William Godfrey, John W. Maynard and
James P. Maynard against E. P. Burton Lumber Company.
Plaintiffs appeal.

*Messrs Howell & Gruber,* for appellants, cite: *Plain-
tiff is entitled to any relief the facts warrant:* 2 Pom. Eq.
Jur., sec. 879; 1 Rich. L. 106; 29 Ency. 676; 9 L. R. A. 607;
13 Pet. 27. *Plaintiff is entitled to abatement:* 2 Hill 657.

*Messrs. Nathans & Sinkler,* contra, cite: *What party
desiring rescission must do:* 192 U. S. 242; 141 U. S. 432;
2 Pom. Eq. Jur. 897; 74 Am. Dec. 662; 66 Fed. 185; 1
Rich. L. 106; 1 Rich. Eq. 404; 57 S. C. 393. *Misrepresen-
tation and fraud:* 2 Hill 658; 2 Bail. 269; 13 S. C. 203; 46
S. C. 426; 50 S. C. 397. *Plaintiff not entitled to abatement:*
7 S. C. 47.

## STATEMENT OF FACTS.

The facts are thus succinctly stated in the argument of
appellants' attorneys:

"This was an action commenced by the plaintiffs against
the defendant (October, 1908) for the rescission of a con-
tract sought to be rescinded, consisting in a sale of a body
of timbered lands to the plaintiffs by the defendant, such
lands being located in Colleton county. The complaint con-
tains substantially these allegations, that the plaintiffs being
engaged in the lumber and timber business, and the defend-
ant being the owner in fee of certain timbered lands, which
it desired to sell, a description of which is set forth in the
complaint, entered into negotiations for the sale of the same
to the plaintiffs. That the agent of the defendant, acting
within the scope of his employment, in showing the plain-
tiffs over said lands, pointed out to the plaintiffs, as a part
of the lands so owned by the defendant, a large body of

land, containing about 750 acres, very heavily timbered, and represented to the plaintiffs, that the purchasers from the defendant, would acquire the same. That the plaintiffs were strangers in the community, living at a distant point, and being ignorant of the true boundaries, and having no means of ascertaining the same, and believing such representation by the agent of the defendant to be true, and relying upon the good faith thereof, purchased of the defendant, the lands mentioned and described, paying the defendant $56,000 therefor and took the defendant's conveyance thereof. That at a subsequent period, the plaintiffs caused the said lands to be surveyed, and thereupon ascertained that the body of land, containing about 750 acres, being very heavily timbered, and which constituted the chief inducement in making the purchase, was not owned by the defendant, and that the plaintiffs had acquired no title thereto. That immediately after ascertaining this fact, the plaintiffs brought the matter to the attention of the defendant, and demanded of the defendant, a rescission of the contract, but the defendant refused to rescind, in whole or in part.

"The defendant, in its answer, denied that there was any misrepresentation; alleged that there was outstanding, an unsatisfied mortgage on the property, and stood upon its legal rights under the contract. There are various other allegations and matters in the pleadings which we do not deem it necessary to recount here.

"The case was referred to the master, with instructions to take testimony and report the same, together with his findings of fact and conclusions of law. The master took the testimony, and, after argument thereon, made his report, finding that all of the allegations of the complaint, were substantially true and correct; but he refused to rescind the contract, holding 'that justice will be done, if the defendant be required to repay the plaintiffs, out of the purchase money received by it, the reasonable value of the two par-

cels lying within the red and yellow lines, with interest from the date of the purchase, these parcels having been pointed out by the agents of the defendant, as being owned by the defendant, and the plaintiffs having purchased and paid out their money, relying upon the truth of such representation.' He found that the reasonable value in the aggregate, of the two parcels so pointed out by the defendant as being owned by it, which it did not own, amounted to $16,305.30, and that the plaintiffs were entitled to judgment against the defendant for this amount, together with interest from the date of the purchase, to the date of the report, amounting in the aggregate to $18,588.04. To this report both the plaintiffs and the defendant excepted."

On hearing the exceptions to the master's report, his Honor, the Circuit Judge, rendered a decree, which he thus concluded after stating the testimony as to the negotiations before the purchase :

"Neither the plaintiffs nor the surveyor, Clark, testify as to what occurred during this visit to the property, except that James P. Maynard testified that Clark had 'made the survey,' evidently referring to that occasion, and denied that he, James P. Maynard, at any time said 'that the best thing to do would be to buy what the Burtons owned, and go ahead and cut the whole thing.'

"Subsequently the purchase of the property was completed, by the payment of $46,000.00, and the delivery of a note for $10,000.00 for balance of the purchase money, and a deed of conveyance to the property, executed by the defendant to the plaintiffs.

"Afterwards, and before the maturity of the note, plaintiffs contended that a portion of the property conveyed did not belong to the defendant, and proposed an abatement in the price. This proposition was refused; and, thereafter, in November, 1907, the note for $10,000.00 was paid.

"This suit for the rescission of the contract was commenced in October, 1908.

"Two of the most important questions involved are: Did the defendant misrepresent its holdings to plaintiffs, and, if so, did the plaintiffs' reliance upon the defendant's representations, induce them to purchase the property? During the hearing of the case on Circuit, I was inclined to answer these questions affirmatively; but upon a review of the testimony, which is voluminous, and a careful consideration of it, I cannot conclude that the purchase of the property was made by the plaintiffs on account of their reliance upon defendant's representations. 'All the cases agree, that the proof of such misrepresentations, whether they are fraudulent or unintentional, must "be full, clear and explicit;" that they were calculated to influence the party in concluding the contract, and that he acted upon them without examining for himself and exercising his own judgment.' *Mitchell* v. *Pinckney,* 13 S. C. 211.

"During the last visit to the property by James P. Maynard, one of the plaintiffs, with Clark, a surveyor of the plaintiffs, and F. G. Morehead and H. M. Tuten, James P. Maynard remained upon the property, with Clark, the surveyor, for three or four days, and this fact is very strong evidence, that plaintiffs were investigating and examining for themselves, and exercising their 'own judgment,' accordingly.

"When all the testimony is considered, I cannot conclude, that the evidence preponderates in favor of the plaintiffs' contention. *Means* v. *Bricknell,* Hill's Rep., Vol. 2, 666.

"Atfer the sale of the property to plaintiffs, and after the alleged discovery of misrepresentation, they exercised acts of ownership over it and endeavored to sell it as their own, at an advanced price. The testimony shows that the plaintiffs, were undertaking to dispose of the property up to January, 1909, after the commencement of this action.

"This is a suit in equity for the *rescission* of a contract, not an action *at law for damages;* and the law, in relation

to the duty of a party claiming rescission, is well stated in the case of *Shappirio* v. *Goldberg,* 192 U. S. 242 : 'It is well settled by repeated decisions of this Court, that, where a party desires to rescind, upon the ground of misrepresentation or fraud, he must upon the discovery of the fraud, announce his purpose and adhere to it.'

"If he continues to treat the property as his own, the right of rescission is gone, and the party will be held by the contract. *Grymes* v. *Sanders,* 93 U. S. 55; *McLean* v. *Clapp,* 141 U. S. 429. In other words, when a party discovers that he has been deceived in a transaction of this character, he may resort to an action at law to recover damages, or he may have the transaction set aside in which he has been wronged, by the rescission of the contract. If he chooses the latter remedy, he must act promptly, 'announce his purpose, and adhere to it,' and not by acts of ownership, continue to assert right and title over the property, as though it belonged to him * * * Pomeroy Eq. Jurisprudence, vol. 2, par. 897; *Pupart* v. *Dunn,* 1 Rich. Law 106.

"Wherefore it is ordered and adjudged, that the exceptions to the master's report, so far as consistent with this decree, be sustained; and so far as inconsistent herewith, be overruled.

"It is further ordered, adjudged, and decreed that the complaint herein be dismissed with costs."

From this decree the plaintiffs appealed upon numerous exceptions.

### OPINION.

The opinion in this case was filed on September 22, 1910, but held up on petition for rehearing until

March 15, 1911. The opinion of the Court was delivered by

MR. JUSTICE GARY. It will not be necessary, to consider the exceptions in detail, as the questions presented by them,

are dependent upon a few well settled principles of law and equity.

When negotiations for the sale of land, culminated in an executed contract, by delivery of the deed, and payment of the purchase money in full, and the purchaser thereafter discovers, that there is an outstanding paramount title to a part of the land, he may elect to pursue one of the following remedies against his vendor: (1) he may bring an action for rescission of the contract, or (2) he may sue to recover damages for fraud, *Welborn* v. *Dixon,* 70 S. C. 108, 49 S. E. 232, or (3) he may sue upon the covenants of warranty in his deed.

The first question that will be considered is whether there was error on the part of the Circuit Judge, in ruling, that the plaintiffs were not entitled to a rescission of the contract.

"While a purchaser of land remains in quiet possession thereof, he cannot sustain a bill for a rescission or abatement of price, on the ground of an outstanding title, unless on the score of fraud." *Lessly* v. *Bowie,* 27 S. C. 193, 3 S. E. 199; *Whitworth* v. *Stuckey,* 1 Rich. Eq. 404; *Van Lew* v. *Parr,* 2 Rich. Eq. 350; *Childs* v. *Alexander,* 22 S. C. 185; *Latimer* v. *Wharton,* 41 S. C. 508, 19 S. E. 855; *Nathans* v. *Steinmeyer,* 57 S. C. 386, 35 S. E. 733; *Diseker* v. *Eau Claire,* 86 S. C. 281.

The reasons for the rule are stated in *Whitworth* v. *Stuckey, supra,* and quoted with approval in *Nathans* v. *Steinmeyer, supra.* Turning to the complaint we find that it does not allege fraud, on the contrary the master ruled that intentional misrepresentation is not charged, and from his ruling there was no appeal.

And the testimony shows that the plaintiffs, have such possession of *all* the lands conveyed, as the law recognizes and which would ripen into a title by adverse possession, if continued for ten years. Code, section 102; *Massey* v. *Duren,* 3 S. C. 34.

The testimony is to the effect, that the plaintiffs entered into possession of the land, upon the delivery of the deed and have exercised general acts of ownership, such as paying the taxes, collecting the rents, making repairs and improvements, advertising the land for sale under the description contained in their deed for $75,000.00 with the statement that the title was first-class, and that they would make a warranty deed to the purchaser. There is no testimony tending to show that the plaintiffs have been evicted or even disturbed in their possession. The exceptions raising this question must, therefore, be overruled.

Even if this could be regarded as an action for damages founded on fraud, they could not be recovered as fraud is not alleged. Nor, if it could be regarded as an action upon the covenants of warranty in the deed, the plaintiffs could not recover any portion of the purchase money, as fraud is not alleged and there has not been an eviction.

Judgment affirmed.

Mr. JUSTICE HYDRICK, *concurring.* Upon the first consideration of this case, as I did not concur fully in the views of either Mr. Justice Gary or Mr. Justice Woods, I stated briefly my reasons for concurring in affirming the judgment of the Circuit Court. At that time, the pressure of other work prevented a more extended consideration and discussion of the questions involved. While I felt satisfied with my conclusion, I had some doubt of the reasons upon which it was based. Therefore, I have given the case careful consideration. Being now satisfied that some of the reasons advanced were unsound, I shall take the liberty of stating more at length the reasons for the conclusions to which a more exhaustive consideration of the questions involved and the authorities bearing upon them have led me.

In the former opinion, I held that two causes of action arose out of the misrepresentation alleged,—one in equity for rescission, and one at law for damages; that the com-

plaint stated only the facts constituting the cause of action in equity for rescission, and the proof failing to establish that cause of action, the relief appropriate to the cause of action at law,—damages,—could not be awarded, because that cause of action had not been alleged,—there being no general allegation of damage, and it not even being alleged that the lands conveyed to plaintiffs were not worth the price paid, and for the further reason that, upon that cause of action, defendant was entitled to trial by jury, which had not been waived.

The material allegations of the complaint are so fully stated in the other opinions, that I shall not repeat them. The facts stated constitute only one cause of action,—one primary right of the plaintiffs and one delict of the defendant. Pom. Rem., sec. 455. But out of this single cause of action, two remediable rights arose,—one in equity for rescission, the other at law for damages. Mr. Pomeroy clearly illustrates this kind of action with a case for specific performance. Where it is alleged that plaintiff has performed his part of a valid contract to convey lands, and that defendant refuses to convey, only one cause of action is stated, affording either legal relief in damages or equitable relief in a decree for a conveyance. He says that, upon the facts stated, even though alternative relief be demanded, only one cause of action is alleged, "although the reliefs prayed for would be distinct, and would have belonged under the old system to different forums,—the common law and the equity courts." Likewise, in this case, the same state of facts,—making only one cause of action,—entitled plaintiffs to either the legal relief of damages or the equitable relief of rescission.

The position that the measure of damages is the difference between the price paid and the value of the property conveyed has the support of very high authority. *Sigafus* v. *Porter,* 179 U. S. 116; 45 L. ed. 113. See also the cases cited in 20 Cyc. 135, note 13, from the Courts of Colorado,

Minnesota, Pennsylvania, Texas, Washington and England. But that question has been settled by this Court in the case of *Beasley* v. *Swinton,* 46 S. C. 426, where it is held that the measure of damages is the difference between the value of the property at the time of the sale and what it would have been worth had it been as represented. This decision has the support of the greater weight of authority. 20 Cyc. 132. While the complaint does not allege, in so many words, that plaintiffs have been damaged, it does allege facts from which damages would directly, naturally and necessarily result, and that is sufficient. *Levi* v. *Legg,* 23 S. C. 280. It appears, therefore, that I erred in holding that two causes of action arose out of the misrepresentation alleged and that the allegations of the complaint were insufficient to sustain an action for damages.

But where a complaint states facts which constitute only one cause of action from which two remedial rights arise, it does not follow the plaintiff shall have both remedies in the same action, for they may be inconsistent. As in the case for specific performance instanced above, the plaintiff certainly could not recover full damages for breach of the contract, and also have a decree for conveyance of the land. In such a case, if the facts had been alleged, and both forms of relief demanded, the plaintiff would have been required to elect which remedy he would pursue. In *Pettus* v. *Smith,* 4 Rich. Eq. 197, the Court quotes with approval the following from *Brown* v. *Winter,* 10 Ohio 142 : "A purchaser from a vendor who cannot make a title has his choice of remedies. He may sue at law to recover damages for the nonperformance of the contract; or he may seek in chancery a specific performance, as near as the vendor is capable of performing; or he may rescind by an action at law for the purchase money; or in a bill in equity. He cannot do both. He must select one of the alternatives, either to enforce or rescind." In that case, (*Pettus* v. *Smith*) the purchaser, after discovering the defect in his vendor's title, brought an action and

recovered damages in place of the land taken from him. It was held that he had elected to enforce the contract, and that he was bound by his election, and the Circuit decree rescinding it was set aside. So, in this case, while two remediable rights arose out of the same cause of action, plaintiffs certainly would not be allowed both remedies,— damages for misrepresentation and also rescission of the contract and restoration of the *status quo.* They are inconsistent. One is allowed on the ground that the contract has been affirmed, the other on the ground that it has been repudiated. Therefore, if plaintiffs had alleged the facts and prayed for both forms of relief or for the alternative relief of damages or rescission, they would have been required to elect which remedy they would pursue. And while, under the present system of procedure, both forms of relief are administered in the same forum, yet they require different modes of trial; for nothing is better settled by the decisions of this Court than that the adoption of the reformed procedure made no change in the inherent distinctions previously existing between actions at law and suits in equity, or in the mode of trial thereof. *Adickes* v. *Lowry,* 12 S. C. 108; *Chapman* v. *Lipscomb,* 18 S. C. 222; *Holliday* v. *Hughes,* 54 S. C. 155, 31 S. E. 867; *Alston* v. *Limehouse,* 61 S. C. 1, 39 S. E. 192.

I propose now to show that plaintiffs have made their election. The complaint, in its whole scope and bearing, is an action for rescission. It alleges that, before suit brought, plaintiffs demanded of defendant rescission of the contract, offering to reconvey the property and account to defendant for the rents and profits, and demanding return to them of the money paid; that they now, in this action, tender to defendant a reconveyance and offer to account for rents and profits; that "plaintiffs are without adequate remedy at law, and will suffer great and irreparable injury without the intervention of this honorable Court." The prayer for relief is: That defendant be required to accept a reconvey-

ance, and pay back the purchase money with interest from date of the deed, together with such sums as plaintiffs have necessarily paid for taxes and in preserving the property, and that an account be taken of the rents and profits to the end that same may be allowed to defendant, and for "such other and further relief as the Court may deem just and equitable and the nature of the case require."

While the general rule is that the prayer for relief is no part of the complaint and cannot determine the character of the action (Pom. Rem., sec. 580; *Glover* v. *Farr,* 23 S. C. 480), yet where the same facts alleged make only one cause of action from which two remediable rights arise, which are inconsistent with each other, and require different modes of trial, there is no other way to determine which mode of trial the parties are entitled to,—a question which must be decided at the threshold of the case. *Gillett* v. *Treganza,* 13 Wis. 472. In other words, in such a case, the prayer for relief determines the plaintiff's election.

The issues so tendered by the plaintiffs were accepted by the defendant. The case was treated by all parties and by the master and Circuit Judge as an action in equity for rescission. The Circuit Judge says in his decree: "This is a suit in *equity* for the *rescission* of a contract, and not an *action at law* for *damages.*" There is no exception to this conclusion. In opening their argument in this Court, plaintiffs' attorneys themselves say: "This was an action * * * for the rescission of a contract." Under the pleadings, neither party could have successfully resisted an order of reference. *DuPont* v. *DuBos,* 33 S. C. 389, 11 S. E. 673. Therefore, under these circumstances, it cannot be said that, by failing to object to the order of reference, defendant waived the right of trial by jury of the issue of damages.

The next question, then, is: Has the defendant the right of trial by jury on the issue of damages, or "abatement of price?" If that relief is equitable, the Court may award it, provided it is "consistent with the case made by the com-

plaint and embraced within the issue." Code, sec. 297. I have attempted to show that it is not "consistent with the case made by the complaint." One the other hand, if it is legal, I think there can be no doubt of the right of trial by jury, unless it can be awarded on another principle, which I shall discuss later.

It seems to me clear, both upon principle and authority, that the relief of damages or "abatement of price," growing out of an executed contract, is purely legal in its nature. Indeed, I cannot see how the phrase "abatement of price" is at all applicable in a cause like this, where the contract has been executed and the price fully paid. While it is true that our Courts have uniformly allowed an "abatement of price" on account of misrepresentation of a material matter affecting the transaction, unless it was of such nature as to call for a total rescission of the contract; yet, in every case which I have been able to find in our reports, it was allowed in actions to recover the purchase price,—where the contract was, therefore, still executory,—in which the purchaser was defendant, and it is established by the later decisions that it was allowed on the ground of failure of consideration. *Evans* v. *Dendy,* 2 Spears 9; *Commissioners* v. *Smith,* 9 Rich. 515.

Where a contract of purchase has been fully executed, and there has been a partial or total failure of consideration, can the purchaser sue in equity to recover a part or the whole of the consideration? Suppose the plaintiffs had merely stated the facts with regard to the misrepresentation, and, knowing that they had so dealt with the land as to preclude their right to rescission, had asked judgment only for recovery of a part of the price paid, would the action have been one at law or in equity? The difference between executed and excutory contracts, and the rights and remedies growing thereout, as well as the difference in the position which one occupies as plaintiff and as defendant in actions thereon is important and must not be overlooked.

This difference is pointed out in *Jones* v. *Bauskett*, 2 Spears 70; *Evans* v. *Dendy*, 2 Spears 9; *Prescott* v. *Holmes*, 7 Rich. Eq. 14; and *Latimer* v. *Wharton*, 41 S. C. 508, 19 S. E. 855. And it is aptly illustrated by the difference in the result of the cases of *Evans* v. *Dendy, supra,* and *Bolivar* v. *Zeigler,* 9 S. C. 287. In the former, the plaintiff was denied the right to recover upon precisely the same facts which afforded the defendant in the latter a complete defense.

After diligent search, I have found no case in our reports in which a purchaser has been allowed to recover from the seller a part of the purchase money on the ground of fraud, misrepresentation, or mistake, affecting the contract of sale, *as plaintiff in an action in equity* after the contract has been fully executed. And I dare say there is none. For, upon such a cause of action, the remedy at law is plain, adequate and complete; and, in that case, equity has no jurisdiction. Pom. Eq. Jur., sec. 176, 178; *Eno* v. *Caldwell,* 14 Rich. Eq. 154; *Hall* v. *Joiner,* 1 S. C. 186.

The next question is: Can the relief be granted on the principle that where equity has jurisdiction for any purpose it will grant complete relief? It is well settled that where a court of equity acquires jurisdiction for any purpose, it will afford complete relief even to the awarding of damages or a money judgment, such as would otherwise be recoverable only in an action at law, *Bouland* v. *Carpin,* 27 S. C. 239, 3 S. E. 219, and cases cited; and in cases where a legal defense arises out of and is inseparable from an equitable cause of action, as in *McLaurin* v. *Hodges,* 43 S. C. 187, 20 S. E. 991; or where the relief is incidental to the main purpose of the action. *Jenkins* v. *Jenkins,* 83 S. C. 537, 65 S. E. 736. But before relief can be granted upon that principle, it must appear that equity had jurisdiction. Upon what does the jurisdiction depend? Certainly not upon the mere allegations of the complaint; for if that were so, the plaintiff could always select his own forum and

10—88

mode of trial, and the very important constitutional right of trial by jury would rest upon very precarious tenure. Necessarily the jurisdiction must rest, not upon allegation, but upon proof of the grounds of equity jurisdiction. Now, in this case, it is the unanimous judgment of the Circuit Court and of this Court that the proof shows that the plaintiffs are not entitled to the relief in equity which they sought, and not because of any act or omission of the defendant. But, because of their own conduct, they have failed to gain any foothold in equity. Therefore, inasmuch as the Court has no jurisdiction to grant any equitable relief, it cannot, under the principle under discussion, grant any relief.

There is some conflict, perhaps an irreconcilable conflict, in the authorities in other jurisdictions upon this proposition. But the views which I have announced seem to me to be reasonable and logical and they are, I think, supported by the greater weight of the decided cases, and not in conflict with any of the decisions of this Court. It would unnecessarily prolong this opinion to recite and discuss the many authorities bearing upon this question. Those who desire to pursue the subject will find many of the cases collated in an extended note to the case of *Johnson* v. *Grommett,* 19 L. R. A. (N. S.) 1064. The preponderance of judicial opinion is expressed by the author of that note as follows: "Although a few cases are found which can be characterized only as variants from the general rule, the preponderance of opinion in relation to the subject under consideration clearly seems to be that where a case for relief in equity fails, a court of equity is without jurisdiction to award other relief by way of disposing of the entire controversy; unless, indeed, it appears that the remedy at law will be inadequate. Otherwise, as the Courts have frequently pointed out, a litigant, by a pretended claim for equitable relief, might deprive his opponent of advantages incident to an action at law." In 16 Cyc. 111, the rule is

thus stated: "Where the bill states matter within the equity jurisdiction, but plaintiff fails to establish such equity, the rule is that the bill must be dismissed, and cannot be retained for the purpose of allowing legal relief to which plaintiff has shown himself entitled."

I propose next to notice some of our own decisions to show that the conclusions which I have reached are not in conflict with them. In *Clover* v. *Farr,* 23 S. C. 480, an action was brought to correct an alleged mistake in a deed. It was therefore treated on circuit as an action in equity, and relief was decreed accordingly. This Court held that the plaintiff had no right to raise the question of mistake, as the alleged mistake did not occur between the parties to the deed sought to be corrected. That, therefore, the court of equity had no jurisdiction. But, as the complaint stated a legal cause of action for the recovery of the possession of real property, the judgment was reversed and the case remanded for trial by jury.

In *Kinsey* v. *Bennett,* 37 S. C. 319, 15 S. E. 965, the action was to enfore an alleged trust, compel the trustee to account, and obtain a lien upon the land alleged to have been conveyed in trust. The evidence failed to establish any trust, but did show a sale of the land to defendant and his failure to pay a part of the purchase price. It was held that plaintiff had failed to show any ground of equitable jurisdiction, and the complaint was dismissed, but without prejudice to plaintiff to bring an action on the legal demand. The Court recognized the general rule, under the reformed procedure, that where a plaintiff brings an action in equity for relief which equity alone can grant and fails to establish his equitable demand, the action should not be dismissed, if the allegations and proof show that he is entitled to some legal relief, but justified the dismissal of the complaint on the ground that the equitable cause of action alleged was wholly inconsistent with the legal cause of action proved.

In *Salinas* v. *Ellis,* 26 S. C. 337, 2 S. E. 121, an action was brought to foreclose a mortgage. The plaintiff alleged that, besides the mortgage debt, the mortgage, by agreement of the parties, was also to secure a note of defendant for $150 given subsequent to the mortgage. Before suit, defendant tendered the amount of the mortgage debt, which was refused on the ground that the amount due on the note was not included in the amount tendered. The Court held that there was no agreement that the $150 note should be secured by the mortgage; that the tender was therefore sufficient and discharged the lien of the mortgage, but allowed plaintiff judgment for the amount due on a mortgage debt and also on the note. Upon first impression, this case to seems conflict with the view that where the ground of equity jurisdiction fails, the Court will not grant legal relief, that is, without trial by jury. But I think the conflict is more seeming than real. In that case, nothing whatever is said about the mode of trial. It appears that the amount of the mortgage debt was not in issue. The defendant tendered the amount due,—therefore admitted that amount to be due. The plaintiff refused it solely on the ground that the amount due on the note was not included. It is probable also that there was no issue as to the amount due on the $150 note, for it may be inferred from the report of the case that the only issue as to that note was whether it was secured by the mortgage. This being so, there was no issue upon which defendant had the right of trial by jury. At any rate, the case decided nothing to the contrary.

In *Miller* v. *Hughes,* 33 S. C. 530, 12 S. E. 419, the action was by a simple contract creditor, who alleged facts showing an indebtedness of the defendant Hughes to him, and a disposition by the insolvent debtor of his property with intent to defraud his creditors. This Court held that the Circuit Court erred in sustaining a demurrer to the complaint for insufficiency. In response to defendant's con-

tention that plaintiffs' demand was legal and should first be established by a judgment at law, before the aid of equity could be invoked, the Court said that under the reformed procedure there was no reason why the plaintiffs should not be allowed to demand judgment for the amount due them "on the law side of the Court," and in the same action ask relief on "the equity side" of the Court from the fraud which would render their action fruitless. On the hearing of the case on the merits, the Circuit Court held that the proof failed to sustain the charge of fraud, and dismissed the complaint. On appeal (38 S. C. 513) this Court sustained the finding as to the charge of fraud, but reversed the judgment on the ground that it was error to dismiss the complaint "without giving plaintiff the opportunity of establishing his debt on the law side of the Court," from which the plain inference is that in the establishment of the debt the parties would have had the right of trial by jury.

In *McMillan* v. *McMillan*, 77 S. C. 511, 58 S. E. 431, the action was for specific performance of a contract to convey land. This Court sustained the Circuit Court in holding that the evidence failed to establish plaintiff's right to specific performance, and held further that the complaint was broad enough to allow plaintiff to recover the money paid on the purchase price, and remanded the cause for that purpose. But nothing was said as to the mode of trial of that issue.

In *Hamilton* v. *McAllister*, 49 S. C. 230, 27 S. E. 63, an action was brought for rescission of contract on the ground of mutual mistake. The Circuit Court decreed rescission. On appeal, two of the Justices of this Court held that the Circuit Court erred in rescinding the contract, but that it should only have been reformed. The reformation suggested, however, was only an abatement of the price agreed upon for the timber on a certain tract of land on account of the plaintiff's being deprived of the timber on a part of the tract, the title to which was supposed to be in defend-

ant, but found to be in another. The other two Justices held that plaintiff had failed to prove that he was entitled to any relief and that the complaint should have been dismissed. As it requires the concurrence of three of the Justices to modify or reverse a judgmnet of the Circuit Court, it follows that the judgment of the Circuit Court was affirmed, and neither of the opinions is binding as authority. I may add, however, that that case may be distinguished from this on the further ground that the contract was executory,—the purchase price being still unpaid.

The case of *Bradley* v. *Aldrich,* 40 N. Y. 504, is very much like the case at bar, and the decision fully sustains the view which I have taken. The syllabus is as follows : "In an action in which the plaintiff seeks only equitable relief, and which is tried by the Court without a jury, it appearing that no equitable relief can be granted, but facts appearing which would warrant an action for damages, the Court may not order a reference to compute the damages, and give judgment therefor." See also *McCullough* v. *Scott,* 13 B. Monroe 172, 56 Am. Dec. 561.

While an election to enforce a contract will preclude the party thereafter rescinding it, I do not think the converse of the proposition is true. An election to rescind, if rescission should be denied, does not preclude an action for damages, for the affirmation of the contract carries all rights thereunder.

I think, therefore, that the judgment of this Court should be that the judgment of the Circuit Court be affirmed, without prejudice to plaintiffs' right of action for damages.

MR. JUSTICE WOODS, *dissenting.* This action is for the rescission of a contract for the sale by the defendant to the plaintiffs of a body of timbered land in Colleton county. The purchase price was fifty-six thousand dollars and the defendant on June 13th, 1907, conveyed to plaintiffs the lands described in the deed as several different tracts aggre-

gating in area eight thousand and seven acres, more or less. The deed contained the clause, "The acreage of the above tracts of land is estimated and is not warranted by the grantor herein." The ground stated in the complaint upon which the plaintiff demanded rescission was that the defendant represented that seven hundred and fifty acres of heavily timbered land of great value, and constituting the chief inducement to the purchase, was included in the land to be conveyed, whereas upon a survey afterwards made it turned out that this land was not owned by the defendant and was not embraced in the deed of conveyance. The further allegation was made that the plaintiffs were strangers in the county where the land was situated and that they relied on the representations of the defendant in making the purchase. The basis of the action is mistake, the complaint containing no allegations that the untrue representations were intentionally made. The answer put in issue the allegations of untrue representations with respect to the land, alleging that the defendant made no representations that the seven hundred and fifty acres was included in its boundaries, but on the contrary expressly put the plaintiffs on notice that the defendant did not know the boundaries, and that they did not believe that the land referred to was owned by it. The further defenses are set up that the plaintiffs seek to throw the depreciation in value of the land due to market conditions on the defendant, that the plaintiffs exercised acts of ownership by efforts to sell and by other acts after the discovery of the alleged mistake; that there is an outstanding mortgage on the land for $40,000, executed by the palintiffs.

The issues were referred to the master, who reported that the plaintiffs had not made out a case for rescission, but should be allowed abatement from the price to the amount of $16,305.30, with interest from date of the purchase, June 15, 1907. The Circuit Court held that the plaintiffs did not purchase in reliance on the statements of the defendant,

but exercised their own judgment as to the boundaries; and adjudged that the complaint be dismissed.

We consider first the rule which the Circuit Court seems to lay down that in an action for rescission the plaintiff can have no relief except rescission. This is not the correct rule. The purchaser is entitled to rescission only when the evidence shows that the thing purchased is so different from that which the seller, with better means of information, had induced the purchaser to believe it to be that the main object of the purchase would be defeated. But when the deficiency does not go to that extent, and yet materially affects the value of the property sold, the purchaser will be entitled to an abatement of the price. *Gray* v. *Handkinson,* 1 Bay 47; *Adams* v. *Kibler,* 7 S. C. 47; *Martin* v. *S. A. L. Ry.,* 70 S. C. 8, 48 S. E. 616.

Even if the action be for rescission and the proof does not warrant that relief, the plaintiff may have the lesser relief of abatement of the price if the evidence is sufficient to show that relief to be equitable. The relief to be granted not being controlled by the prayer of the complaint, the Court may grant any relief less than that demanded in the complaint within the scope of the pleadings and warranted by the evidence. *Miller* v. *Hughes,* 33 S. C. 530, 12 S. E. 419; *Guerard* v. *Jenkins,* 80 S. C. 223, 61 S. E. 258.

The principle that in an action for rescission, the plaintiff supposing himself to be entitled to that form of relief, the Court of Equity has jurisdiction to grant the lesser relief of abatement in price when the evidence does not warrant rescission but does require the relief of abatement seems to me to be essential to the complete administration of justice and to be established in this State by at least three cases the authority of which has never been questioned. Referring to the subject the Court says in *Means* v. *Brickell,* 2 Hill Ch. 313: "Thus the law very clearly is, and it would seem unnecessary to multiply authorities on the point; but there are two cases which occurred in the Court of Chancery

in 1817 so directly analogous to this in point of principle, that I cannot forbear to mention them; and although they are not reported they were decided on full hearing in the Court of Appeals in Equity.   One of these was the case of *Caldwell* v. *Briggs,* where on a bill for the specific performance of an agreement for the sale of a tract of land, the defendant, the purchaser, was allowed an abatement in the price, because the complainant, the seller, had in the negotiation for the sale, misrepresented the quantity of timbered land contained in a certain section, although it was admitted that the misrepresentation was not wilful.   The other case alluded to is the case of *Macon* v. *Waites.*   That was a bill to foreclose a mortgage given as the price of a tract of land, and the defense set up was, that while examining the land with a view to the sale the defendant inquired of the seller what number of acres were contained in a certain body of woodland, which was a leading object in the purchase, who, after making some calculations, answered that he supposed that there were two hundred acres, but that he had made no survey of it; and that the whole quantity of high land amounted to 600 acres.   There turned out to be a considerable deficiency in the quantity of woodland, and although the defendant distinctly admitted in his answer that there was no intention on the part of the seller to deceive, and that he really believed there were two hundred acres of the woodland, yet it was held that the defendant was entitled to an abatement in the price, on account of the deficiency." See also *Hamilton* v. *McAlister,* 49 S. C. 231.

I do not think the evidence sustains the conclusion laid down by Mr. Justice Gary that the plaintiffs have entered upon the seven hundred and fifty acres of land which they allege they erroneously supposed to be a part of the property to be acquired by their purchase from the defendant.   On the contrary, this land was excluded in the survey made by the plaintiffs after their purchase, and the defendant admits that it had no title to 587 7-10 acres of it and could not

convey that part of it by its deed. Further, the action is not founded on any claim that the defendant's deed covered the seven hundred and fifty acres of land; on the contrary the allegation is that the defendant represented to the plaintiffs that this tract would be embraced in its deed, and that it was not in fact a part of any of the tracts conveyed. The question therefore is not one of deficiency of quantity, or of defect of title under a warranty in a deed embracing the land, but of an entire failure to convey the land which it is alleged the defendant by verbal representations led the plaintiffs to believe it could and would convey, and thus induced them to purchase at the price paid. The law as to breach of warranty is applicable only to a deficiency in area or defect of title of land which the deed purports to convey. It follows that as to the land which the deed here does not purport to convey, the law of warranty has no application. There is therefore no force in the objection that the plaintiffs can have no relief in this action without proof of entry and eviction. Certainly where the grantor has failed to convey land which it was agreed he could and would convey, it is not necessary to the grantee's right of relief that he should actually commit a trespass on the lands of another by entering upon them and suffering eviction.

There is no reason to doubt either on reason or authority that if a purchaser is induced by the representations of the seller, having better means of information, to buy one thing, when he supposes he is buying a different thing, he will be entitled to rescission or abatement, according to the circumstances, although the representations may have been due not to fraud but to honest mistake. *Means* v. *Brickell,* 2 Hill 657; *Ruberg* v. *Brown,* 50 S. C. 397.

The case then turns upon the issue of fact whether in the negotiations for the sale of the large body of land, containing in all more than eight thousand acres, the defendant with superior means of information induced the plaintiffs

to purchase by the misrepresentation that seven hundred and fifty acres of very valuable timbered land which it did not own would be conveyed by the deed. The rule is thus tersely stated by Judge Evans in *Evans* v. *Dendy*, 2 Speer 9 : "Where the purchaser of land has been deceived by misrepresentation, whether intentional or not, that fact may be set up by way of defense to an action for the purchase money. If the object of his purchase has been defeated by reason of the misrepresentation, he may, according to the decided cases, be wholly discharged from the debt. If only *partially* defeated, he may be allowed an abatement in the price." The rule was stated again and applied in *Means* v. *Brickell, supra,* which was also a suit at law to recover a debt, where the facts were very similar to those disclosed by the evidence in this case. In that case the caution to be observed in considering such applications for relief from contracts on the grounds of mistake or fraud is thus expressed by Judge Johnson: "I am aware that the principle is liable to abuse in its application, but that is not a sufficient reason for discarding altogether a principle which appears to me so necessary to the administration of justice. Great care should be taken that in its application it should be confined to its legitimate objects, and that trivial circumstances should not be allowed to set aside or derange written contracts which have been solemnly entered into between the parties; and some useful hints have been thrown out in *Frazier* v. *Harvey,* 2 Bailey 270. For example, where the misrepresentation complained of, is as to the quality of land sold, or the quantity when it has not been ascertained by admeasurement or some other certain rule, or the relative quantities of the different description of highland and swamp, and other matters founded merely on opinion; for a purchaser is not liable to be imposed on by the mere *opinions* of the seller, and if he is, when he has the same means of forming an opinion for himself, it is his own folly, from which he cannot and ought not to be relieved.

It ought to appear, also, that the manner of the misrepresentations was calculated to influence the party in concluding the contract, and that he acted upon them without examining for himself and exercising his own judgment. Proof of the misrepresentation or mistake ought to be full, clear and explicit. The indiscriminate application of the principle, without the most satisfactory evidence, would have a tendency to set afloat and derange all contracts."

The law with respect to misrepresentations is again thus set out in *Ruberg* v. *Brown, supra:* "Hence, to entitle one to relief ' for false representation, the misrepresentation must relate to some material fact, past or existing, concerning the subject of the contract, within the range of knowledge, as distinguished from matters of mere belief or opinion, uncertain and conjectural, upon which reliance has been placed with resulting damage, when the complaining party did not deal upon equal terms and with equal means of information. False expressions of opinion by one possessing special knowledge concerning the subject of the contract, which the other party, ignorant on the subject and with unequal means of information, relies on to his injury, may be actionable for fraud. If a party's situation with reference to property contracted for, is such that he cannot fairly and reasonably exercise his own judgment in reference thereto, he is not a dealer on equal terms, and he has a right to rely on the representations of value by the seller made to induce the purchase."

The questions of fact are to be considered in the light of these well established rules. An extended analysis of the irreconcilable and perplexing testimony on the subject would not be of value. Some inferences, however, may be stated with confidence. The defendant had purchased several parcels of timbered land and held them in one large body of more than eight thousand acres. "Social Hall Plantation" was a tract adjacent to defendant's land owned by Gonzales. The defendant had not had a survey made of

its land, but Morehead, a surveyor in the employment of the defendant, had borrowed a plat from J. I. Garvin which would have enabled him to discover the lines, and the defendant was in possession of another plat obtained from J. D. Warren, from which it could have ascertained the lines. The officers of the defendant company did not know the limits of their land on the side next to "Social Hall Plantation." Nevertheless, before the plaintiffs began to negotiate, the Burton Lumber Company had employed H. M. Tuten, as the person whom it supposed to be best informed, to show the property to those who wished to inspect it with a view of purchasing. Accordingly, when the plaintiffs opened negotiations, they were sent to Tuten as the person who would show the property for the defendant. This Tuten undertook to do, pointing out to Maynard, one of the plaintiffs, the general location and direction of the lines, as he supposed them to run. In doing so he represented to Maynard that a certain portion of very heavily timbered land was within the defendant's lines, when in fact it was a part of "Social Hall Plantation" belonging to Gonzales. It was not proved that Morehead himself joined in these representations, but he was present and it was obvious to him that Maynard was considering the purchase of the property as shown to him by Tuten, the agent of the defendant company. This piece of land afterwards turned out by survey to contain 587 7-10 acres; there is on it about five thousand feet of standing timber per acre, worth about $2.50 per thousand, and the land after the timber is cut will be worth about $4.50 per acre. The effort was made without success to find a marked line at the place pointed out by Tuten as the boundary; but I do not think that the circumstance that no marked line could be found should be held to protect the defendant when its agent was representing the land as part of its holdings offered by it for sale. The evidence is clear beyond controversy that the plaintiffs would have been foolish to pay $56,000.00 for

the land exclusive of the tract of 587 7-10 acres, and that
they would not have done so. The defendant had been for
some time owner of the land, and undertook to have its
agent show it to the plaintiffs; and it had in its possession
plats from which it could have ascertained that it had no
title to the 587 7-10 acres. True, its officers testify that they
did not know the boundaries and that the plaintiffs were put
on notice both by their verbal statements before the sale,
and by the expression in the deed, "The acreage of the
above tracts of land is estimated and is not warranted by
the grantor herein," that they would buy at their own risk
in this respect; and the evidence does lead to the inference
that both parties knew of a degree of uncertainty in the
boundaries; but the facts are none the less significant that
the plaintiffs paid and the defendant received the purchase
money on the distinct representation and understanding that,
notwithstanding such uncertainty about the exact bound-
aries, this very valuable timbered land would be embraced
in the purchase, and that otherwise the plaintiffs would not
have bought at the price paid. The evidence on this point
is clear and convincing. Indeed, M. C. Burton, the secre-
tary and treasurer of the defendant corporation, says in
his testimony that but for the pressure of the panic of 1907,
which followed the sale, he might as a matter of business
have considered an abatement in the price.

It may be true that the plaintiffs should have exercised
greater care in ascertaining the boundaries of the land; but
relief against the defendant should not be refused for that
reason, when the defendant, with plats in its hands which
would have shown the true boundaries, showed this land as
part of its holdings, well knowing that the plaintiffs were
making an inspection to determine the value and decide
whether they would make the purchase. Here, then, is an
untrue statement as to a substantial fact falling clearly
within the rule above quoted from *Ruberg* v. *Brown.* In
that case and in *State* v. *Gaillard,* 2 Bay 11, relief was

granted where mistake was due to entire dependence on the representations of the seller, when the purchaser could easily have ascertained the facts by inspection.

The conclusion seems inevitable that unless some relief is granted, the plaintiffs will suffer grave injustice, and the defendant have an unconscionable advantage because of the serious and clearly proved mistake of supposing that the defendant owned and the plaintiffs would acquire by the purchase 587 7-10 acres of very valuable land which the defendant now admits that it did not own and did not embrace in its deed.

For the sake of clearness we have thus far considered the case as if only the tract of 587 7-10 acres was involved. The plaintiffs allege that the same mistake was made with respect to another portion of very heavily timbered land of 167 7-10 acres. The evidence, however, is very far from being clear and convincing that there was any mistake in · supposing that this portion of the land fell within the boundaries of the land conveyed. The survey of Wilson, plaintiffs' surveyor, made after the purchase, excludes it from the land conveyed by defendant, but the testimony of this surveyor indicates that in excluding it he depended largely on verbal statements as to the lines, and that he would not have been able to survey it as land separate from the defendant's holdings but for reliance on statements of Maynard, one of the plaintiffs. What is still more important, if the surveyor had followed the older plat instead of a later one, this 167 7-10 acres would not have been embraced in the Gonzales land. No deeds were introduced showing that the land had been conveyed away from the tract owned by the defendant of which it was at one time a part, and a transfer cannot be presumed from the mere representations on a junior plat. Hence we think the plaintiffs have failed to show by the clear preponderance of the evidence, as they were bound to do, that there was a mis-

take in supposing this land to belong to the defendant and to be conveyed by its deed.

The relief, therefore, which the Court can grant must be limited to that which flows from the mistake about the 587 7-10 acres of land. The next inquiry is, what should be the subject of the relief? Clearly, the case is not one for rescission. The plaintiffs treated the land as their own and attempted to sell it even at a profit, after the discovery of the mistake. The principle is well settled that a party to a contract cannot, after the discovery of mistake or fraud, act under the contract and then repudiate it. *Rupart* v. *Dunn,* 1 Rich. 101; *Shappirio* v. *Goldberg,* 192 U. S. 232, 48 L. Ed. 419. The relief then must be limited to abatement of the price. While absolute accuracy is not possible in fixing the amount to be allowed to the plaintiff, a computation substantially just in result may be made from undisputed estimates of the value of the timber and the land.

The proportion of the purchase money, $56,000, which the plaintiff should recover is represented by the proportion which the estimated value of the 587 7-10 acre tract bears to the estimated value of the whole tract which the plaintiff supposed they were buying. The evidence was full as to the amount of timber which could be cut per acre and its value per thousand feet on each of the three tracts, and also as to the value of the land after the timber should be cut off. Using these figures the value of the several tracts can be easily determined in the following way:

8007 Acre Tract.

Timber, per acre, 1,500 feet at $2.50
  per M...........................$ 3.75
Land, per acre.....................  2.25
                                   ————
  8,007 acres at.................$ 6.00  $48,042.00

### 161 7-10 Acre Tract.

Timber, per acre, 6,500 feet at $2.50
   per M. ..........................$16.25
Land, per acre...................... 4.50

   161 7-10 acres at...............$20.75  $ 3,355.27

### 587 7-10 Acre Tract.

Timber, per acre, 5,000 feet at $2.50
   per M. ..........................$12.50
Land, per acre...................... 4.50

   587 7-10 acres at...............$17.00  $ 9,990.90

Total estimated valuation of three tracts...$61,388.17

The value of the 587 7-10 acre tract was thus 16.27+ per cent. of the total valuation. In the same proportion finding 16.27+ per cent. of the purchase price, i. e., $56,000, we have $9,113.88, as the sum which should be recovered. The plaintiffs should therefore be entitled to recover of the defendant the sum of $9,113.88 with interest from the date of the conveyance to the defendant. The defendant, however, should be allowed to elect whether it will pay this sum or take a reconveyance, paying back the entire purchase money with interest less the profits from the land received by the plaintiffs and any damage done to the land by the plaintiffs.

The judgment of this Court should be that the judgment of the Circuit Court be modified, and that the cause be remanded to that Court for such further proceedings as may be necessary to enforce the rights of the parties as adjudged by the Court.

MR. CHIEF JUSTICE JONES *concurs in this opinion.*

     Petition for rehearing was refused by *per curiam* order filed March 15, 1911.