## NATHANS v. STEINMEYER.

1. RENTS—MORTGAGOR—TAXES.—RECEIVER should not be appointed at instance of mortgagor to collect rents and pay taxes, as he has adequate remedy therefor under the statute.
2. EQUITY—FORECLOSURE—PARAMOUNT TITLE.—Neither partial nor total failure of consideration can be set up as a defense to foreclosure by reason of paramount outstanding title before eviction.

Before ALDRICH, J., Charleston, August, 1898. Affirmed. Previous order of Judge Buchanan appointing receiver reversed.

Action by David Nathans, Alexander B. Nathans, and Jacob N. Nathans, surviving executors of Nathan Nathans, against John H. Steinmeyer, Eliza R. Steinmeyer, Mrs. A. C. Burger, Miss J. E. Weyman, John Vollers, administrator, and the devisees of Matilda Steinmeyer. The Circuit Judge states the facts as follows:

"This action, instituted on May 22d, 1895, is for the foreclosure of a mortgage of real estate in the city of Charleston, S. C. The mortgaged premises were sold and conveyed by the executors of Nathan Nathans to J. H. Steinmeyer, on March 29th, 1887, by said Steinmeyer to C. F. W. Ficken, on September 20th, 1893, and by said Ficken to Mrs. A. Matilda Steinmeyer, on August 1st, 1894. The mortgage, the subject of this action, was executed and delivered by the said J. H. Steinmeyer to the executors of N. Nathans, on March 29th, 1887, to secure the payment of $10,000 and interest, the credit portion of the purchase money of said mortgaged premises, evidenced by a bond of the same date. Mrs. Matilda Steinmeyer died testate, and the seven last named defendants are her children, and the devisees under her will of the said premises. The other defendants are alleged to have or claim some interest or lien upon said mortgaged premises, accrued since the execution of the said mortgage to said executors.

"The answer of J. H. Steinmeyer, 'admits the truth of the several allegations made in the said complaint.' Second. For a further defense and counter-claim, after setting out the purchase of the premises, the execution of the bond and mortgage alleges: 'III. This defendant further alleges that at the time of the execution and delivery to him as aforesaid by the said plaintiffs and their late coexecutor, of the said deed of conveyance, there then was and still is outstanding a valid paramount title to a large and valuable portion of the said premises. IV. That at the time of the execution and delivery as aforesaid of the said deed of conveyance, the said plaintiffs and the said Levy Nathans, as executors aforesaid, had no interest or estate in said portion of the said premises, and no power enabling them to convey the same in fee simple or for any lesser estate; and further, that they have not now, nor has either of them since then, acquired any interest or estate therein, or been vested with any power to convey the same; nor did their testator, the late Nathan Nathans, have any interest or estate therein.'

"The answer of the heirs and devisees of Mrs. A. Matilda Steinmeyer, the wife of J. H. Steinmeyer, and of B. I. Simmons, as subsequent mortgagee, also set up the defense of a deficiency in the property sold by the aforesaid executors to said J. H. Steinmeyer, by reason of an outstanding paramount title.

"The case was referred to Master G. H. Sass by an order filed April 20th, 1896, to hear and determine the issues of law and fact involved in the pleadings, with leave to report any special matter.    The master's report, which is full and clear, was filed on May 17th, 1897. * * *

"I shall refer to such of the leading facts as will present the issue, and discuss such of these facts in detail as may be necessary.    On April 17th, 1675, the Lord Proprietors granted to John Comings 133 acres of land 'upon the Oyster Point,' and 'bounding upon Ashley River to the west thereof, and Cooper River, also Itaan ( ?) River towards the east, as appears by a plat thereof hereto annexed.'    Said plat, dated June 15th, 1672, represents a body of land lying between two parallel lines, beginning at Cooper River and extending towards the Ashley River.    By the certificate of 'Fenwick Bull, Register, July, 1767,' upon record it appears 'that 'the plat from which this is copied was so obliterated and damaged that no accurate copy could be made, and the above is done in the best manner possible.'    That is all that we know of the grant or plat, so far as we can gather from the copies of the same.    The granted premises passed under the will of John Coming to Affra Coming, his wife, and under her will to John Harleston and Elias Ball, in 1698.    The property remained in the Harleston family, or that of their descendants, until 1827, and subsequently, by various mesne conveyances, a portion of this property became vested in Nathan Nathans, including the portion his executors conveyed to J. H. Steinmeyer, and which constitute the mortgaged premises in litigation.    The Harleston or Naylor plat, made in 1770, and annexed to the record of the partition proceedings, between Isaac Harleston and Wm. Harleston *et al.*, and the

record of that cause, contained in pages 200 to 213, both inclusive, of Book A, Partition Court·of Common Pleas, Charleston County, are in evidence. The 'outstanding' valid paramount title to a large and valuable portion of the premises as asserted by defendants in testimony and argument, is in the city of Charleston, S. C. That portion of the premises the title to which is in the city of Charleston, as asserted, consists of marsh lands, mud flats, or water lots, lying upon the bank of the Ashley River, and over which the tide ebb and flow. Under the grant to Comings and the plat annexed thereto, defendants contend that the lands granted by the Lords Proprietors to said Comings extended only to the line of ordinary high water upon the banks of the Ashley River; and that the lands lying between high and low water marks on the banks of said river were not granted to Comings, but remained the property of the State. *State* v.*Pinckney*, 22 S. C., 507; *State* v. *Pacific Guano Company, Ib.,* 50; *The State* v. *Oak Point Mines, Ib.,* appendix, 293.

"Defendants next submit that said mud flats, under an act of the legislature, passed in 1836 (VII. Stat. at Large, p. 151), were vested in the city of Charleston for public purposes, and that thereafter no grant of the same could be presumed from the possession of private individuals. Upon this showing defendants submit that the title to the mud flats or water lots is in the city of Charleston. Plaintiffs, while denying the proposition advanced by defendants, contend that the Comings' grant includes the water lots in question; that the plat annexed is mutilated, imperfect; that the Harleston or Naylor plat, made in the proceedings for partition in the case of Harleston v. Harleston, in 1770, and adopted by the Court, was a plat of a portion of the Comings' grant, and that said plat carried or placed the boundary at low water mark on the Ashley River, and that said water lots, as represented by the plat and declared in the decree of the Court, were in the possession of the parties to that suit. Plaintiffs go further, and say that under the act of April, 1770, to lay out streets in that section of the city of Charleston and the

'legislative plat' annexed to that act, that the legislature recognized the fact that the original Comings' grant extended to low water mark, that such legislative recognition and acquiescence was equivalent to a grant and to a legislative declaration that the lines of the Comings' grant extended to the lines of the Naylor plat, which was the low water mark. It being admitted that the State could grant marsh lands—*Heyward* v. *Farmers Co.*, 42 S. C., 156, and other cases—plaintiffs contended that the possession of Harlestons, as shown by the records of the Court in the partition case, plat, etc., came under the provision of the act of 1787. The section of the act cited appears as sec. 1878 of the Revised Statutes of S. C., and reads : 'An actual, peaceable and quiet possession of lands five years previous to the fourth day of July, 1776, shall be deemed a good and sufficient title, and any grant obtained since that time, or which may be obtained for the said land, is hereby declared null and void.' Under the contention of plaintiffs, the title to the water lots or mud flats was conveyed to J. H. Steinmeyer; that the State granted the title to John Comings; that the State, by the act and 'legislative plat' of 1770, recognized and acquiesced in, and admitted the title of the Harlestons, and that under the act of 1787 it perfected the title of the Harlestons, and estopped itself from claiming these water lots. This is the history of the facts brought out in this litigation. Neither the State of South Carolina nor the city of Charleston are parties to this action."

Defendants appeal.

*Messrs. Ficken, Hughes & Ficken,* for appellants, cite: *As to appointment of receiver:* 34 S. C., 80; 32 S. C., 137; Code, 265; 1 Hill. Ch., 342; 1 Bail. Eq., 150; 17 Stat., 19; 15 S. C., 246; 117 Mass., 491; 5 Wall., 79; 2 McC. Ch., 137; 6 N. J. Eq., 447; 4 Md. Ch., 344; 4 H. & M., 424; 7 Ves., 307; 26 N. J. Eq., 452; 15 S. C., 184. *As to the defense of failure of consideration before eviction:* 1 Bay, 231, 257; 2 Bay, 558; 2 Brev., 100, 472; 2 N. & McC., 198, 186; 2 Mills,

159; 1 McC. L., 359; 3 McC. L., 449; 1 Bail. L., 218. 250, 278, 261; 1 Hill L., 322; 3 Hill L., 300; Cheves L., 115, 127; 2 Rich. Eq., 340; 1 Rich. Eq., 404; 2 Rich. Eq., 330; 41 S. C., 512; Rice Ch., 58; 12 Rich. L., 154. *As to relief against misconception of law:* 2 Bail., 648; 1 Hill Ch., 250; 2 McC. Ch., 462; 8 Wheat., 215; 44 S. C., 32; 13 S. C., 209.

*Messrs. Buist & Buist,* also for appellants, cite: *As to relief against misconception of law:* Sexton, 232; 4 Ohio, 358; 7 Humph., 86; 6 Ohio, 169; L. R., 2; H. L., 149; 1 Head., 77; L. R., 6; L. H., 223; 64 Ind., 50; 99 N. C., 30; 1 N. J. Eq., 232; 5 Humph., 529; 14 Ore., 542; 3 Col., 551; 3 Gratt., 193; 2 Bail., 623; 117 Pa. St., 298; 2 McC. Eq., 462; 2 Bail., 649; 1 Hill Ch., 251; 44 S. C., 34; 36 S. C., 260; 40 S. C., 92.

*Messrs. Henry A. M. Smith* and *Huger Sinkler,* contra, cite: *As to pleading deficiency of title affecting part of property, rule in Courts of law:* 1 Bay, 256, 278, 326; 2 Bay, 558; 2 Brev.; 99; 3 Brev., 458; 1 N. & McC., 78; 2 N. & McC., 186, 193, 184; 1 McC., 121, 125, 584; 3 McC., 449; 4 McC., 434; Harp., 290, 441; 1 Hill, 317, 322; 2 Hill, 259; 3 Hill, 299; Chev., 115; 1 McMil., 37; 1 Spear., 119, 120; 2 Spear, 9; 1 Rich., 52; 6 Rich., 362; 2 Rich., 167; 9 Rich., 579. *Rule in Equity:* 1 Rich. Eq., 350; 2 Rich. Eq., 350. *Rule since 1867:* 9 S. C., 287; 13 S. C., 210; 22 S. C., 185; 27 S. C., 193; 35 S. C., 359; 41 S. C., 508; 53 S. C., 32. *As to relief against mistake of law:* 6 S. C., 485; 20 S. C., 337; 26 S. C., 47; 35 S. C., 359; 36 S. C., 575; 40 S. C., 101; 44 S. C., 22. *Receiver properly appointed:* 31 S. C., 547; 40 S. C., 114; 50 S. C., 567; 32 S. C., 134; 34 S. C., 77; 51 Me., 434; 59 Mass., 289.

April 16, 1900. The opinion of the Court was delivered by

MR. JUSTICE GARY. This is an action to foreclose a mortgage of real estate in the city of Charleston. The respondents made application for an order appointing a

receiver on the ground that the mortgaged premises were about to be sold in payment of delinquent taxes. This order was granted. Subsequently the case was heard upon the merits. The defense was partial failure of consideration by reason of a paramount outstanding title. This defense was overruled, as there had been no eviction, and as a mistake of title cannot be relieved against, if it is a misconception of law. A detailed statement of the facts is set forth in the decree of his Honor, Judge Aldrich.

The appellant filed the following exceptions to the order of his Honor, Judge Buchanan: "1st. Because at the time of the making of the order last named the said mortgagor had no interest in the said mortgaged premises, or in the rents thereof. 2d. Because at the time of the making of the order last named the plaintiffs herein had no lien upon the rents and income arising from said mortgaged premises. 3d. Because there is no provision in said deed of mortgage warranting the appointment of a receiver."

The view which we take of the questions raised by these exceptions renders it unnecessary to consider whether the Court, in the exercise of its equitable jurisdiction, will interfere with the owner of the fee, by the appointment of a receiver, at the instance of a mortgagee, when the rents and profits are not pledged, and there is no provision in the mortgage warranting such appointment. It is well settled that if the mortgagee has an otherwise adequate remedy, equity will not interfere in the premises. Section 334 of the Rev. Stat. is as follows: "Sec. 334. Any person holding a lien by way of, or any interest in the nature of, a mortgage upon any property, the subject of taxation, upon which the mortgagor shall have failed to pay the tax, may at any time before the sale thereof for delinquent taxes, as hereinafter provided, pay the tax, with any costs, penalties or assessments which may have accrued thereon; and thereupon he shall be entitled as against the mortgagor, his representative, privies or assigns, to include the amount so paid, and all interests thereafter accruing thereon, in the debt

secured by his mortgage." It is not made to appear that the property was insufficient to pay the mortgage, nor were there any other facts brought out, showing that the remedy offered by section 334 was inadequate. Under these circumstances, equity will not lend its aid. His Honor, the Circuit Judge, therefore, erred in the appointment of a receiver.

The appellants also excepted to the decree of his Honor, Judge Aldrich, on the following grounds: "1st. Because the said presiding Judge erred in holding that the said defendants could not avail themselves of their defense of failure of consideration prior to their eviction from the said mortgaged premises. 2d. Because the presiding Judge erred in holding that a mistake of title cannot be relieved against, if it is a misconception of law."

We regard the law as settled in this State that neither partial nor total failure of consideration can be set up as a defense on account of a paramount outstanding title, before eviction, and, therefore, see no practical benefit to be derived from commenting on the numerous cases, or tracing the history of this question, which has caused so much trouble by reason of the fact that the Courts of law and equity heretofore entertained different views upon the subject. The reason of the rule is to be found in *Abbott v. Allen,* 2 Johns. Ch., 519, where Chancellor Kent pertinently asks: "Can this Court proceed to try the validity of the outstanding claim in the absence of the party in whom it is supposed to reside, or must he be brought into Court against his will, to assert or renounce a title which he never asserted, and perhaps never thought of? I apprehend there is no such doctrine or practice in this Court, and that a previous eviction or trial at law is, as a general rule, indispensable." This case is cited with approval in the case of *Whitworth v. Stuckey,* 1 Rich. Eq., 404, and after quoting the language just used, Chancellor Harper proceeds as follows: "I beg leave to throw out some other considerations. Nothing would tend more to the promotion of fraud and litigation than the establishment of a contrary rule. In the frequent

fluctuations of the commercial property of the country, fluctuations to which our country seems more liable than any other, there is a corresponding fluctuation in the value of property. He who purchases land at a high price, will be tempted, when there follows a great fall of value, to discover and bring forward some claim which may have the effect of ridding him of his bargain. But this is a betrayal of his vendor's title, and against good faith. The case has occurred of a vendee who, upon such a fall of property, has been at great expense of time, labor and money in seeking information from individuals and searching public offices, in order to ferret out a paramount title which there was not the remotest probability would ever be presented, which did not appear to be known to the person in whom it was vested, and which there was hardly a probability he would prosecute successfully even if he knew it. This was scarcely less than fraud; yet, according to the doctrine contended for, relief ought to have been granted in such a case, for there was clearly an outstanding title in some one * * * Absurd consequences would follow, if the Court should determine the validity of an outstanding claim, and the alleged claimant should never afterwards prosecute it or should prosecute it unsuccessfully." This principle was reaffirmed in the recent case of *Baum* v. *Raley,* 53 S. C., 32. We do not deem it necessary to add any thing further to the decree of the Circuit Judge, whose conclusions are sustained by the authorities which he cites. (The authorities relied on by Circuit Judge are cited by respondents' attorneys.—R.)

It is the judgment of the Court that the order appointing a receiver be set aside and that the decree be affirmed.