### BOOZER v. GUNTER *ET AL.*

(120 S. E., 749)

1. APPEAL AND ERROR—APPELLANT HAS BURDEN OF SHOWING TRIAL COURT'S FINDING WAS AGAINST WEIGHT OF EVIDENCE.—It is incumbent upon the appellant to show that the finding of the Circuit Judge is contrary to the weight of the evidence, and, failing to do this, the judgment of the Circuit Court should be affirmed.

2. MORTGAGES—IN FORECLOSURE ACTION, EVIDENCE HELD TO SUSTAIN TRIAL COURT'S FINDING.—In an action to foreclose a purchase-money mortgage, evidence *held* to sustain trial Court's finding as to amount due and that defendant was not entitled to an abatement for an alleged partial failure of consideration.

Before TOWNSEND, J., Lexington, November, 1922. Affirmed.

Action by T. J. Boozer v. Jerome R. Gunter et al.    Judgment for plaintiff and defendant named appeals.

The Circuit Decree was as follows:

The plaintiff instituted this action in foreclosure in the Court of Common Pleas for Lexington County, March, 1921, against the defendants, Jerome R. Gunter, Bank of Swansea, O. T. Wallace, J. L. Boozer, and M. F. Gunter, parties defendant in said action, and they claim some interest described in the complaint. The case was referred to H. L. Harmon, Esq., Clerk of Court of the said Lexington County, as Special Referee, to take the testimony in the case and report the same to the Court. The Referee held references and took the testimony, but before the completion of the testimony the defendant Jerome R. Gunter, by an order of Judge Sease, presiding Judge of the Court, was allowed to file his answer interposing his defense in the action.

The issues raised by the answers of the defendants Batesburg Cotton Oil Company, Bank of Swansea, and O. T. Wallace were heard and disposed of at the 1922 March term of Court of Common Pleas for Lexington County, by Hon. Ernest Moore, presiding Judge, by his Decree, except that there appears to be a balance due upon the note and mortgage of the defendant Bank of Swansea in the sum of $264.65, with interest thereon from the 18th day of April, 1922, which is herein found to be due the Bank of Swansea.

The defendant J. L. Boozer files an answer in this case alleging that he has or claims no interest in the premises described in the complaint, and defendant M. F. Gunter has defaulted, and under the testimony she appears to have no interest therein. All of the issues therefore have been disposd of except the answer and counterclaim of the defendant J. R. Gunter, dated October 25, 1921, and the balance due the Bank of Swansea herein mentioned.

The case came up before me for a hearing at the November, 1922, term of the Court of Common Pleas for Lexington County upon the pleadings and testimony taken. I find from the testimony that the defendant Jerome R. Gunter

on the 18th day of January, 1918, executed and delivered to the plaintiff, T. J. Boozer, his five promissory notes in the sum of $500 each, payable in five equal, annual installments, from the 18th day of January, 1918, payable as follows: On or before the 18th day of January, 1919, $600; on or before the 18th day of January, 1920, $600; on or before January 18, 1921, $600; on or before 18th day of January, 1922, $600; and on or before the 18th day of January, 1923, $600—with interest thereon from date at the rate of 8 per cent. per annum, payable annually, and 10 per cent. attorney's fees in case of suit to collect the same or any part thereof. And in order to secure the payment of the said notes, the said Jerome R. Gunter and his wife, M. F. Gunter, renouncing her dower, executed and delivered to the plaintiff the mortgage covering the lands described at the foot of this decree. The mortgage contains a provision that the whole amount of the principal shall become due upon default of the payment of either installment. I find this mortgage to be a first lien, and is a purchase-money mortgage, upon the lands hereinafter described, and it appears from the testimony that one of the notes, to wit, the one falling due on January 18, 1919, has been paid, and there is now due and owing to the plaintiff, T. J. Boozer, on the remaining four notes, the sum of $3,283.20, principal and interest, and the sum of $328.32 as attorney's fees, making a total of $3,611.52.

The defense and counterclaim of the defendant Jerome R. Gunter, set up in his answer, pleads a partial failure of consideration, in that he alleges that a portion of the lands conveyed to him by the grantor by deed dated 18th day of January, 1918, and described in the deed as a part of "the Old Uriah Jeffcoat mill site," had been theretofore conveyed by the grantor to J. W. and Carrie Bell Blaine by deed dated 16th day of January, 1918, and another portion of said mill site lay beyond the boundaries of the grantor's

lands, and belonged to one J. J. Mack, and that plaintiff had no title to such parts when he undertook to convey the mill site to said defendant.

The plaintiff contends that this plea cannot be sustained, first, for the reason that the defendant purchaser has not been evicted from the mill site purchased by him from the plaintiff by any one under title paramount, citing *Diseker v. Land & Improvement Co.,* 86 S. C., 284; 68 S. E., 529, and *Moore v. Beard,* 91 S. C. ,502; 74 S. E., 1062.

The plat of H. R. Schoenberg, surveyor, in evidence as Exhibits 8 and 10, is not shown to accurately locate the mill site, dam, and pond, and it does not clearly appear from the evidence that any part of the mill site, dam, or pond is within either the lands conveyed to the Blaines or owned by J. J. Mack. Hence the defendant Gunter has not established by proof such facts as would under any circumstances entitle him to a deduction from the purchase price he promised to pay. *Adams v. Kibler,* 7 S. C., 47. *Mitchell v. Pinckney,* 13 S. C., 203. *Peake v. Renwick,* 86 S. C., 226; 68 S. E., 531; 33 L. R. A. (N. S.), 409. *Stone v. Stone,* 113 S. C., 233; 101 S. E., 863. Both J. W. Blaine and Mack have testified as witnesses in this case, and neither of them claim any substantial interest in the mill site conveyed by the plaintiff to Gunter. Even if a substantial outstanding claim by third parties should have been shown by the evidence, it would, under authorites cited by the plaintiff's counsel, be no defense to this action, as there has been no eviction of the defendant Gunter from the lands which plaintiff sold him.

The deed of T. J. Boozer to J. W. Blaine and Carrie Belle Blaine, is introduced in evidence, and the deed of T. J. Boozer to J. R. Gunter is also introduced in evidence, and the Blaine deed was recorded on the 6th day of February, 1918, and the Boozer deed was recorded on the 19th day of January, 1918, one day after its execution and delivery.

I so find from the evidence. For this reason I find and conclude that the plaintiff is entitled to foreclosure for the unpaid balance due on his said four notes and mortgage.

Wherefore, it is ordered, considered, and adjudged that the plaintiff, T. J. Boozer, have judgment against the defendant J. R. Gunter for the sum of $3,611.52 and costs; and that the defendant Bank of Swansea have judgment against the defendant J. R. Gunter in this action for the sum of $264.65 and costs.

It is further ordered and adjudged that the premises hereinafter described be sold by the Clerk of this Court before the courthouse door in Lexington County on the first Monday in February, 1923, or some subsequent convenient sales day thereafter, after due and legal advertisement upon the following terms, to wit, for cash; that out of the proceeds of the said sale the Clerk shall first pay the costs and expenses of this action and any taxes that may be found to be due on said premises, and then to pay to the said T. J. Boozer, or his attorney, the sum of money adjudged to be due him, and, next, to the Bank of Swansea or its attorney the amount adjudged to be due it, and, if there should remain any of the proceeds of the sale after the payment of the judgment so found to be due the said T. J. Boozer and Bank of Swansea, he shall pay the same to the defendant J. R. Gunter; that the said mortgages be foreclosed, the equity of redemption of the said Jerome R. Gunter in and to the aforesaid premises, and all persons claiming by, through, or under him, is hereby forever barred; that upon compliance with the terms of sale the said Clerk shall execute and deliver to the purchaser a good and sufficient title to the said premises free from all claims and liens of the parties to this action.

It is further ordered that the plaintiff, T. J. Boozer, or other persons, may become a purchaser at such sale, and that the purchaser or purchasers be let into possession of the premises upon the production of the Clerk's deed; that as

an earnest of good faith the purchaser shall be required to pay to the Clerk of the Court within a half hour after he has bid the property off the sum of $50 as a deposit on account of his bid, and in default thereof the Clerk of Court shall immediately resell the same before the courthouse door without further advertisement to the highest bidder upon the same terms above mentioned.

The following is a description of the real estate ordered sold:

"All that certain tract of land in Bull Swamp township, County of Lexington, and state aforesaid, containing one hundred seventy-one (171) acres, more or less, and bounded on the north by Swansea public road, on east by lands of S. P. Harsey, on the south by lands of Annie L. Martin, and on the west by lands of J. J. Mack, and by lands of J. W. Blaine and Carrie B. Blaine. Being tracts Nos. 8, 9 and 10 as shown by plat of the same made by H. R. Schoenberg, dated the 8th day of January, 1918. Said tract of land included the old Uriah Jeffcoat mill site."

*Messrs. Martin & Sturkie* and *Timmerman & Graham,* for appellant, cite: *Contract should be rescinded or price abated where property does not include as much as represented:* 1 Bay 278; 1 McC., 122; 2 Hill 313; 7 S. C., 58; 86 S. C., 226. *What amounts to eviction:* 63 N. Y. Supp., 88; 5 Ind., 393; 44 N. Y., 382; 96 N. W., 1035; 7 R. C. L., 1155; 3 Hill L., 588. *General warranty includes covenants of possession:* 2 Speer 649; 102 S. C., 374.

*Messrs. Efird & Carroll* and *E. B. Friday,* for respondent, cite: *In an executed contract purchaser must show mistake and damage from such mistake:* 2 Hill Law 661; 7 S. C., 47; 13 S. C., 203; 86 S. C., 226; 113 S. C., 233; 91 S. C., 496; 57 S. C., 386; 86 S. C., 201. *Abatement on account of paramount title will not be allowed before eviction:* 1 Rich. Eq., 404. *Burden on appellant to show error:* 117 S. C., 454; 116 S. C., 1.

December 18, 1923.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

The respondent, T. J. Boozer, instituted this action in the Court of Common Pleas for Lexington County, March, 1921, against the appellants, Jerome R. Gunter *et al.*, to foreclose a purchase-money mortgage executed by appellant, Gunter, on the 18th day of January, 1918, which mortgage covered the tract of land mentioned and described in the complaint and set out in the case. The defendant appellant filed an answer in which he sets up a partial failure of consideration and fraud, and asks for a rescission of the contract or an abatement of the purchase price. The case was heard at the November, 1922, term of the Court of Common Pleas for Lexington County, by his Honor, Judge W. H. Townsend, who found that the plaintiff respondent was entitled to a decree of foreclosure for the unpaid balance due upon the notes and mortgage foreclosed.

When the decree of his Honor, Judge Townsend, was filed, the appellant by 15 exceptions alleged error. The first exception complains of error as to the amount found due by his Honor on the notes and mortgage and judgment given therefor. The other exceptions practically impute error on the part of his Honor in holding that the appellant was not entitled to a cancellation of the mortgage or to an abatement of $2,000 on the purchase price.

Let the decree of Judge Townsend be reported.

The appellant is confronted by the proposition that it is incumbent on him to show that the finding of the Circuit Judge is contrary to the weight of the evidence, and, failing to do this, the judgment of the Circuit Court should be affirmed.

As to the amount found due by his Honor, his finding is supported by an abundance of evidence. His Honor is correct in holding that the plat of Schoenberg in evidence, as Exhibits 8 and 10, does not accurately

locate the mill site, dam, and pond. We think by the plat, however, that the dam site and a small portion of the pond is on the land conveyed to the Blaines; but we do not think that the appellant is entitled to an abatement in this suit.

There is no evidence showing that the dam site is on a rocky shoal, with special value as a dam site. There is very little land covered by the Blaine plat that appellant claims, and we fail to see how his charge of fraud, deceit, and damage can be sustained.

The appellant has not been ousted by a paramount title in another (*Moore v. Beard*, 91 S. C., 496; 74 S. E., 1062, and cases cited therein), and we are of the opinion that he has failed to show that the findings of Judge Townsend were against the weight of the testimony.

All exceptions are overruled, and judgment affirmed.

MR. CHIEF JUSTICE GARY and MR. JUSTICE FRASER concur.

MESSRS. JUSTICES COTHRAN and MARION dissent.

MR. JUSTICE COTHRAN (dissenting): Action for the foreclosure of the mortgage upon a tract of land containing 171 acres, executed on January 18, 1918, by J. R. Gunter to T. J. Boozer, to secure the payment of five notes of $600 each, dated January 18, 1918, and payable, respectively, on January 18, 1919, 1920, 1921, 1922, and 1923, with interest from date at 8 per cent. and 10 per cent. attorney's fees.

The defendants, other than J. R. Gunter, namely, Batesburg Cotton Oil Company, Bank of Swansea, and O. T. Wallace, were made parties as claiming interests or liens upon the property. The issues raised by their answers were heard and disposed of (in what manner is not stated in the record for appeal) at March term, 1922, by decree of Circuit Judge Moore, except the claim of Bank of Swansea, which claims a balance of $264.65, upon a note and mortgage presumably executed by J. R. Gunter upon the premises.

The notes and mortgage of Gunter to Boozer arose out of a contract for the purchase by Gunter of the tract of land at $4,000, $1,000 of which was paid at the time, and the notes and mortgage were given for the remainder of the purchase price, $3,000.

The defendant Gunter answered the complaint for foreclosure, and set up by way of defense and counterclaim that there was a failure of consideration, in that the plaintiff Boozer had willfully and fraudulently failed to convey to him the mill, mill site, dam, and land upon which the mill site and dam were located; that the notes and mortgage were obtained from him by imposition and fraud. He asked for a rescission of the contract, for the cancellation of the notes and mortgage, and for the return of the money which he had paid upon the contract; and that, failing in this, he be allowed an abatement of $2,000 on the purchase price of the land.

The case was referred to a special Referee to take and report the testimony. The matter was then heard by his Honor, Judge Townsend, Circuit Judge, at November term, 1922, upon the testimony so reported. On December 22, 1922, Judge Townsend filed a decree in which he rendered judgment in favor of the plaintiff, Boozer, for $3,611.52, declined to allow a rescission of the contract or an abatement of the purchase price, and ordered a sale. He also allowed Bank of Swansea judgment for the amount of their claim, $264.55, and participation in the proceeds of sale.

From this decree the defendant Gunter has appealed upon various exceptions, which fairly raise the matters hereinafter discussed.

It appears that in January, 1918, the plaintiff Boozer, owned a tract of land containing 466.65 acres, and had the same subdivided into 13 tracts, as appears from plat of Schoenberg, surveyor, dated January 8, 1918.

On January 16, 1918, Boozer sold and conveyed to J. W. Blaine and Carrie B. Blaine subdivisions 3, 4, 6 and 7, containing in the aggregate 59.65 acres.. This deed was recorded February 6, 1918.

On January 18, 1918, Boozer sold and conveyed to the defendant J. R. Gunter subdivisions 8, 9, and 10 containing in the aggregate 171.25 acres. This deed was recorded January 19, 1918.

Subdivision 8, conveyed to J. R. Gunter, is bounded on the west by subdivisions 6 and 7 conveyed to the Blaines, and by land of one J. J. Mack.

The situation will be understood from the following portion of the Schoenberg plat drawn from it:

The contention of the defendant Gunter is that the main object of his purchase was the acquisition of the mill site and the establishment of a mill; that this necessarily included the mill site itself, the dam, the land upon which it was located, and the pond; that the property conveyed by the deed as delineated on the Schoenberg plat does not include, in its entirety, that which he contracted to buy, in that parts of the dam and pond are covered by the deed from Boozer to the Blaines and other parts are covered by the title of the

adjoining owner J. J. Mack, whose land lies south of subdivision 7 of the Blaine land.

There can scarcely be a doubt that the acquisition of the mill site, the dam, the land upon which it is located, and the pond, was a material inducement to the purchase, an inducement operative through the defendant's business purposes and through the express representations made by the plaintiff.

The defendant testified:

"I would not have bought the property without the mill, mill site, dam, and land on which the dam was located; wouldn't have bought it at all without that."

He also testified that the plaintiff came to his house and offered to sell him the land for $4,000, telling him that the millhouse, mill site, and dam were located on the 171-acre tract, which is borne out by the description in the deed, "Said tract of land includes the old Uriah Jeffcoat mill site"; that the plaintiff carried him down to the property, and pointed out the line between subdivisions 7 and 8; that when the papers were executed the plaintiff told him again that he was selling him the mill site, milldam, and the land upon which the dam was located. He is corroborated by the witness Harley, who testified that he heard Boozer tell Gunter, at the latter's house, that he was selling him the mill site, dam, and millpond; and by another witness, Craft, that he heard Boozer say that Gunter would not buy the place unless he got the milldam and water privileges. The testimony of the defendant and these two witnesses is uncontradicted by the plaintiff, or by any of his witnesses. It is thus established that the defendant purchased the property for a mill business, and was induced to do so by the express representations, both in the deed and verbally, that the property he was buying, by the plat, included what he wished and what he reasonably thought was included.

That the plat did not include all of the pond, all of the dam, all of the land upon which the dam was located, and

all of the millhouse, to all of which the defendant was entitled under his contract, appears beyond a doubt upon a simple inspection of the plat.

The learned Circuit Judge in his decree states:

"The plat of H. R. Schoenberg, surveyor, in evidence as Exhibits 8 and 10, is not shown to accurately locate the mill site, dam, and pond, and it does not clearly appear from the evidence that any part of the mill site, dam, or pond is within the lands conveyed to the Blaines or owned by J. J. Mack."

In this conclusion I think that he is clearly in error. An examination of the foregoing diagram will show that the dividing line between the Blaine subdivisions 6 and 7, and the Gunter subdivision 8, begins on the Swansea road and runs south 25½° east, 24 chains, to a corner in the pond; it then takes a northeast direction for a short distance, not stated on the plat, to a stake corner in the millpond; from the latter point, it runs south 48½° east, 11 chains, to the southwest corner of subdivision 8.

While the dam is not precisely located on the plat, it does not require a very great stretch of the imagination to locate it at the lower end of the millpond, where the water is shown to have been arrested, and west of the water's edge. The lower eastern boundary of the Blaine subdivision 7 is shown on the plat to be, not the dam or the edge of the water, but a line drawn through the pond, cornering in the pond, inclosing a distinct area in the pond, lying between the dam and the line running straight down from the Swansea road, which he had staked off and was cultivating.

It is equally clear from an inspection of the plat, shown in the above diagram, that that portion of the dam south of the Blaine land, as well as a portion of the millpond, is upon the land of J. J. Mack.

The learned Circuit Judge further states in his decree:

"Both J. W. Blaine and Mack have testified as witnesses in this case and neither of them claim(s) any substantial

interest in the mill site conveyed by the plaintiff to Gunter."

If this statement is based upon the theory that the mill site does not include the dam and pond, it is doubtless correct. One bargaining for the mill site, however, would naturally contemplate the acquisition of. the necessary appurtenances for a mill run by water power: The mill seat, the dam, the land supporting it, and the pond. When therefore Boozer conveyed the land and described it as including "the old Uriah Jeffcoat mill site," evidently an ancient establishment, he intended to represent that the plat included all of these. appurtenances,

In *Lide v. Thomas,* 1 McCord, 125 note, it is said:

"The evidence did show that there was no pond sufficient to turn a mill appurtenant to the land, and consequently that the land did not contain a mill seat; for without a sufficient head of water, there cannot be a mill seat."

So construed, the statement is incorrect, certainly so far as Blaine is concerned. In his testimony he says:

"I claim the land as per that plat. * * * The old mill projects a little over. * * * I only claim the land as per the plat; I don't claim any water rights. * * * This plat takes in the dam. * * * I object to him repairing the. dam and putting in a mill on my land. This dam is on a part of my land. I cultivated the land just above the dam, * * * about an acre."

This shows that he not only claims the whole of the dam and the land upon which it is located, but an acre of land above the dam, a portion of the millpond itself.

This is a matter of little consequence, however, for Blaine was not a party to the suit, and if he had renounced, in his testimony, all interest in the property, it is not apprehended that he would afterwards be estopped from asserting an adverse claim; the case. is not to be decided upon what Blaine claims whether much or little.

The learned Circuit Judge further states:

"Even if a substantial outstanding claim by third parties should have been shown by the evidence, it would, under

authorities cited by the plaintiff's counsel, be no defense to this action, as there has been no eviction of the defendant Gunter from the lands which the plaintiff sold him."

The Circuit Judge has confused the principles of law applicable to entirely different conditions. It has been held in numerous cases that where the mortgagor is in possession of the land conveyed by the deed, and that possession has not actually been disturbed by eviction, the existence of an outstanding paramount title or incumbrance in another is no defense to an action for the foreclosure of the mortgage, except in a case of fraud. *Whitworth v. Stuckey,* 1 Rich. Eq., 410. *Van Lew v. Parr,* 2 Rich. Eq., 350. *Childs v. Alexander,* 22 S. C., 185. *Lessly v. Bowle,* 27 S. C., 193; 3 S. E., 199. *Latimer v. Wharton,* 41 S. C., 508; 19 S. E., 855; 44 Am. St. Rep., 739. *Nathans v. Steinmeyer,* 57 S. C., 286; 35 S. E., 733. *Diseker v. Eau Claire,* 86 S. C., 281; 86 S. E., 529. *Godfrey v. Lumber Co.,* 88 S. C., 132; 70 S. E., 396. *Moore v. Beard,* 91 S. C., 496; 74 S. E., 1062.

A very different situation is presented where the mortgagor has never been in possession of the property, where it is not covered by the deed, and where the contract is entered into upon the inducing misrepresentations of the seller that it was included in the deed. How the eviction of the mortgagor from that which he has never had possession of is essential to securing relief is incomprehensible. As Mr. Justice Woods pertinently and forcibly said in his dissenting opinion in the case of *Godfrey v. Lumber Co.,* 88 S. C., at page 154; 70 S. E., at page 400:

"It follows that as to the land which the deed here does not purport to convey, the law of warranty has no application. There is therefore no force in the objection that the plaintiffs can have no relief in this action without proof of entry and eviction. Certainly where the grantor has failed to convey land which it was agreed he could and would convey, it is not necessary to the grantee's right of relief

that he should actually commit a trespass on the lands of another by entering upon them and suffering eviction."

In *Moore v. Beard,* 91 S. C., 496; 74 S. E., 1062, it is held that a purchaser of lands has no right to ask for an abatement in the purchase price unless he shows that he has been evicted by title paramount or that he has never obtained possession of them.

It does not appear that Gunter ever went into possession of the property which is now claimed by the Blaines, or which by the plat is unquestionably the property of Mack; both of which Gunter claims he intended to purchase, and which Boozer represented to him were included in the deed. He testifies that some time after the conveyance he went down to the milldam and saw that Blaine was in possession of land above the dam; had staked it off and was cultivating it, claiming it under his deed as covering the land, the dam and one-half of the millhouse. The plaintiff admitted in his testimony that Blaine was there claiming such rights under the deed and plat, and that he claimed half of the millhouse and wanted him to put a partition through the house.

It unquestionably appearing that the land claimed by Blaine, including a portion of the dam and a part of the millpond, is actually covered by the deed from the plaintiff to Blaine, as shown on the plat, and has never been in the possession of Gunter, it would be unreasonable to hold that an actual eviction of the defendant from it is essential to his relief.

As is said in *Brass v. Vandecar,* 70 Neb., 35; 96 N. W. 1035:

"Constructive eviction is caused by the inability of the purchaser to obtain possession by reason of the paramount title. When, at the time of the conveyance, he finds the premises in possession of one claiming under paramount title, the covenants for quiet possession or of warranty will be held broken without any other act on the part of either

the grantee or the claimant, for the latter can do no more towards the assertion of his title, and, as to the former, the law will compel no one to commit a trespass in order to establish a lawful right in another action."

It appears then that the acquisition of the entire appurtenances to the establishment of a mill was a material, inducing consideration to the purchase of the property by Gunter; that the deed does not convey what Gunter intended to acquire; that the sale was induced by the misrepresentations of Boozer that it did; that Gunter, without making an investigation for himself, relied upon the representations of Boozer; and that the property conveyed, without the full appurtenances of the mill, is worth less than with them. The question that confronts the Court is whether or not the defendant Gunter is entitled to any, and if so what, relief, against the plaintiff's action for foreclosure.

He claims: (1) A rescission of the contract, cancellation of the notes and mortgage, and a return of the payments made by him upon the purchase price of the property; (2) failing in this, an abatement of the mortgage debt to the extent of the diminished value of the property which was actually conveyed and taken possession of by him.

The authorities are clear, I think, that he is not entitled to a rescission of the contract. He went into possession of the property actually conveyed by the deed in 1918; or rather, he was already in possession as a tenant when the trade was made and continued in possession as vendee; he learned very soon after the execution of the conveyance that Blaine was in possession of a portion of the property which he supposes he had purchased, but which was not covered by his deed; he made no demand for a rescission, continued in possession, and is still in possession; he executed mortgages upon the property to secure other obligations incurred by him, paid the taxes, and treated it as his own property.

The principle is well settled that a party to a contract cannot, after the discovery of mistake or fraud, act under

the contract and then repudiate it. *Godfrey v. Lumber Co.,* 88 S. C., 132; 70 S. E., 396. *Rupart v. Dunn,* 1 Rich., 101. *Shappirio v. Goldberg,* 192 U. S., 232; 24 Sup. Ct., 259; 48 L. Ed., 419.

Is the defendant Gunter entitled to an abatement of the mortgage debt? I do not entertain a doubt that he is.

In the very first book of the law reports of this State is found the case of *Gray v. Handkinson,* 1 Bay, 278, decided 130 years ago and followed in a score of cases. In that case the defendants' testator had given his bond for the purchase price of a tract of land upon which a mill seat was represented to be. Shortly after the purchase, it was discovered that an older survey included the mill seat and an area of timber land adjacent. The defense set up was that the object Handkinson had in view in purchasing the tract was the mill seat; that it was valuable only upon that account; that the great object in view was defeated and the remainder of the tract rendered of little value.

It is interesting to note that the case was tried in the Court of Common Pleas, at that time presided over by three Judges, Rutledge, Chief Justice, afterwards Chief Justice for a brief period of the Supreme Court of the United States, appointed but not confirmed, Judge Burke, and Judge Bay.

The jury was instructed that wherever the deficit in the thing sold was so great as to render it unfit for the use the purchaser intended, and the seller represented, the contract should be rescinded; but if the defect was not so great as to warrant a rescission of the sale in toto, such abatement of the price ought to be made as might be just and reasonable, according to the nature and extent of the defect. Applied to the case on trial: That if the mill seat was the great object which Handkinson had in view at the time of the purchase, and the remainder of the land would be of little value without it, the jury should find for the defend-

ants, executors; but that if the mill seat was only a secondary object of the purchaser, and the remainder of the land would not be materially injured by its absence, they should make such reasonable abatement as would make the party whole for any injury he might have sustained on account of the deficiency or defect, which should be deducted from the amount of the bond. The jury returned a verdict for the defendant, effectuating a rescission of the sale in toto, which appears to have been approved by the Court, which declared in a note that upon those principles "a great number of cases have been determined." I find the case cited and followed in the following cases: *Thompson v. Mc-Cord,* 2 Bay, 76. *Tunno v. Fludd,* 1 McCord 122. *Peden v. Owens,* Rice, Eq., 55. *Barksdale v. Toomer,* Harp., 290. *Bordeaux v. Cave,* 1 Bailey, 250. *Johnson v. Purvis,* 1 Hill., 322. *Van Lew v. Parr,* 2 Rich. Eq., 321. *Means v. Brickell,* 2 Hill., 657. *Evans v. Dendy,* 2 Speers, 9; 42 Am. Dec., 356. *Jones v. Bauskett,* 2 Speers, 68. *Rupart v. Dunn,* 1 Rich., 101. *Abercrombie v. Owings,* 2 Rich., 127. *Evans v. Yongue,* 8 Rich., 113. *Commissioner in Equity v. Smith,* 9 Rich., 515. *Adams v. Kibler,* 7 S. C., 47. *Latimer v. Wharton,* 41 S. C., 508; 19 S. E., 855; 44 Am. St. Rep., 739. *Supply Co. v. Jones,* 87 S. C., 426; 69 S. E., 881.

In *Peake v. Renwick,* 86 S. C., 228; 68 S. E., 532; 33 L. R. A. (N. S.), 409, it is said:

"Where it appears that a purchaser at such sale has been imposed upon by fraud or misrepresentation, even when the misrepresentation was innocently made, as it was in this case, and where it further appears that he relied not upon his own investigation and judgment, but upon such misrepresentation, and that it was a principal inducement to the purchase, he is entitled, in an action brought against him for the purchase money, to relief, which may, according to the circumstances, consist either in a *pro tanto* abatement of the purchase price, or in a total rescission of the contract."

In *State v. Gaillard,* 2 Bay, 11; 1 Am. Dec., 628, and *Tunno v. Fludd,* 1 McCord, 122, it is held:

"That whenever there is a failure of consideration, a misrepresentation or concealment of material circumstances, it will vitiate the contract in toto or entitle the party injured to such a reasonable abatement in the price of the thing sold, as will compensate him for the misrepresentation."

In *Wylie v. Adams,* 1 Nott & McC., 78, an action on two bonds which had been given for the purchase of a tract of land, the Court on appeal directed that the defendant was at liberty to plead or give in evidence on a discount, misrepresentation of the land.

In *Lide v. Thomas,* reported in a note to *Tunno v. Fludd,* 1 McCord, 122, the plaintiff had purchased from the defendant a tract of land "on Hurricane creek, containing a mill seat with a dam, etc." It appeared that when the dam was raised sufficiently to supply water for the mill, the land of another was flooded. The latter recovered damages from the plaintiff for the trespass, and the plaintiff sued the defendant upon his warranty. The Court held that he was entitled to recover, saying:

"But the plaintiff is under the necessity of contracting the pond in order to avoid trespassing on the land of his neighbor, in such a manner, that it is of no use to him in respect of the main object of the contract. He has, therefore, been deceived as to the prime object in making the purchase. The principal consideration has failed. His views and expectations have been disappointed, and he has sustained a considerable loss in consequense of the contract. This loss is imputable to the defendant. It has happened in consequence of his representation and warranty. The plaintiff does not appear to have relied on his own judgment or information, as to the sufficiency of the pond; he relied on the defendant's warranty."

In *Means v. Brickell,* 2 Hill., 657, while negotiations for the purchase of a tract of land were pending, the parties

inspected the premises together; the plaintiff represented that there were 300 acres of woodland within the limits and that the boundary ran in a particular direction. After the contract was concluded, it was discovered that there were only 120 acres of woodland and that the line ran in another direction. In an action by the seller upon the purchase-money notes it was held that parol testimony of these misrepresentations was admissible, and that if they formed an inducement to the purchase, whether made through fraud or mistake, they constituted a good defense by way of discount to the action. The Court says:

"The land sold had been shewn by the plaintiff to the defendant, and the case stated supposes that when it was described in the conveyance, both the parties thought that the description corresponded with the boundaries shewn in the negotation for the sale. The defendant certainly thought so, and so did the plaintiff, or he was guilty of fraud, and in either case the defendant is entitled to relief."

It is not deemed necessary to incumber this opinion with further extracts from the decided cases. Suffice it to say that the foregoing principles are sustained without exception by the following cases, all of which have been carefully considered: *Moore v. Lanham*, 3 Hill., 299. *Adams v. Kibler*, 7 S. C., 47. *Evans v. Dendy*, 2 Speers, 9; 42 Am. Dec., 356. *Jones v. Bauskett*, 2 Speers, 68. *Grice v. Scarborough*, 2 Speers, 649; 42 Am. Dec., 391. *Hampton Park v. Sottile*, 102 S. C., 372; 86 S. E,. 1066. *Mitchell v. Pinckney*, 13 S. C., 203. *Thompson v. Wofford*, 13 S. C., 216. *Stone v. Stone*, 113 S. C., 233; 101 S. E., 863. *Moore v. Beard*, 91 S. C., 496; 74 S. E., 1062. *Atlanta & Charlotte Air Line Ry. Co. v. Victor Manufacturing Co.*, 93 S. C., 397; 76 S. E., 1091. *Latimer v. Wharton*, 41 S. C., 508; 19 S. E., 855; 44 Am. St. Rep., 739. *Frazer v. Harvey*, 2 Bailey, 269. *Barksdale v. Toomer*, Harp., 290. *Peden v. Owens*, Rice, Eq., 55. *Thompson v. McCord*, 2 Bay, 76. *Godfrey v. Lumber Co.*, 88 S. C., 132; 70 S.

E., 396.  *Paint Co. v. Burnett, Hedgpeth Co.,* 85 S. C., 486; 67 S. E., 738.  *Charleston v. Blohme,* 15 S. C., 124; 40 Am. Rep., 690.  *Ruberg v. Brown,* 50 S. C., 397; 27 S. E., 873.  *Supply Co. v. Jones,* 87 S. C., 426; 69 S. E., 881. *Abercrombie v. Owings,* 2 Rich., 127.

There is no finding by the Court below in reference to the diminished value of the tract by reason of the failure of the plaintiff to put the defendant in possession and title of the mill site and its appurtenances.  The case should be remanded for the purpose of ascertaining the amount of abatement to which the defendant is entitled.

The defendant excepts to the finding of the Circuit Judge that the amount due upon the notes and mortgage on December 22, 1922, was $3,611.52.  I think that the exception is well taken.  There were five notes of $600 each.  The first one to mature was due January 1, 1919.  The plaintiff testified that "he thought" that the first note had been paid. If he thought so, it most probably is true, and the payment of that note I assume included the interest up to January 18, 1919.  On the latter date the defendant paid $192, which was exactly the interest on the four remaining notes aggregating $2,400 for one year, indicating that the interest upon these notes for the first year was paid when the first note was paid.  If so, the amount due on December 22, 1922, was $2,400 with interest at 8 per cent. from January 18, 1920, ($562.13) and attorney's fees ($296.21), total $3,258.34, instead of $3,611.52.

The abatement, however, should be as of the date of the notes, and this calculation would be materially altered.

As the case should be remanded to ascertain the abatement, and as the payments made by the defendant do not clearly appear, this matter should also be left open and remanded for further evidence and adjudication.

I think that the decree below should be reversed, and the case remanded for further proceedings in conformity with the foregoing conclusions.

MR. JUSTICE MARION concurs.